**Robert M. RIEDER**

v.

**CHEROKEE INSURANCE COMPANY and Great American Assurance Company and the Providence Washington Insurance Company and Cambridge Mutual Fire Insurance Company.**

Civ. A. No. 83–2720.

United States District Court, E.D. Pennsylvania.

May 23, 1986.

Chester T. Tintenfass, Pechner, Dorfman, Wolffe, Rounick & Cabot, Philadelphia, Pa., for plaintiff.

Joseph T. Bodell, Jr., Philadelphia, Pa., for Great American Assurance Co.

Earl T. Britt, Philadelphia, Pa., for Cambridge Mut. Ins. Co.

Stanley P. Stahl, Philadelphia, Pa., for Cherokee Ins. Co.

Robert S. Davis, Philadelphia, Pa., for Providence Wash. Ins. Co.

## MEMORANDUM AND ORDER

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Robert Rieder, is seeking a declaratory judgment requiring the defendant, Cambridge Mutual Fire Insurance Company ("Cambridge"), to defend and indemnify him in connection with actions in the Superior Court of New Jersey in which he is being sued by tenants and owners of the Twinbridge Apartment Complex in Carneys Point, New Jersey, alleging that he is liable for a fire there on November 23, 1980. Cambridge and Rieder have filed cross-motions for summary judgment.

The material facts concerning which there are no genuine issues may be summarized as follows: Cambridge issued a Special Multi-Peril insurance policy, No. 2 × 45 88 31, to Rieder, which was in force from May 1, 1979 to May 1, 1982, a period that includes the date of the fire. Rieder purchased the ground upon which the Twinbridge Apartment Complex is located in 1969; the complex was fully constructed by 1972. Rieder operated and managed the complex after its construction until 1976, when he transferred all of his right, title and interest in the property. Rieder retains no possessory interest in the Twinbridge Apartments.

Rieder has been sued directly and as a third-party defendant by owners and tenants of the Twinbridge Apartment Complex in three separate lawsuits filed in the Superior Court of New Jersey: *Weinberg, et al. v. Dinger, et al.*, C.A. No. L–20663–81 (the *"Weinberg"* action); *Cole, et al. v. Dinger, et al.*, C.A. No. L–26294–81 (the *"Cole"* action); and *Childress, et al. v. PNB Mortgage and Realty Investors, et al.*, C.A. No. L–64638–81 (the *"Childress"* action). The claims against Rieder include the following: negligence in the design, planning, engineering and/or construction of the Twinbridge Apartments; negligence, carelessness and negligent omissions in making construction and design decisions with respect to the Twinbridge Apartments; negligence in construction by creating a defective dwelling; and breach of duty of care to construct and build a safe and habitable dwelling.

The Cambridge policy consists of (1) a Declarations page setting forth the named insureds, the policy period, the premises insured, the coverage afforded and the amount of coverage, and a list of various endorsements applicable to each coverage; (2) general conditions and definitions applicable to the policy; and (3) the several endorsements setting forth the terms of coverage exclusions, and other matters.

The named insured on the policy is Robert M. Rieder, dba the Robert Rieder Co. and Willow Brook Apartments, c/o Compass Realty Company, Suite 428, One Bala Cynwyd Plaza, Bala Cynwyd, Pennsylvania, 19004. By an endorsement dated May 1, 1979, Top of the Hill Enterprises and Top of the Hill Developers, Inc., were added as additional named insureds.

The designated premises are listed in the policy as "N/S Egypt Road, near Trooper Road, W. Norriton Township, Mont. Co., Pennsylvania;" the policy was for a three year term—May 1, 1979 to May 1, 1982.

Cambridge contends that it has neither the duty to defend nor indemnify Rieder in connection with the *Weinberg, Cole* and *Childress* actions. In support of its contention, Cambridge asserts a number of exclusions which, it claims, relieve it of any duty to defend or indemnify Rieder in connection with all three actions. Both Cambridge and Rieder assert that there are no genuine issues of material fact and each move for summary judgment.

Summary judgment is granted under Fed.R.Civ.P. 56 whenever the moving party establishes that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 472 (3d Cir.1985). The Court must resolve all doubts as to the existence of any genuine issues in favor of the nonmoving party, and all inferences must be drawn in favor of the nonmoving party. *Id.* The nonmoving party, however, cannot rely on his pleadings or mere legal conclusions.

*Sound Ship Building Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 100 (3d Cir.), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). Summary judgment shall be granted, however, where there are undisputed facts from which only one conclusion may reasonably be drawn. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

An insurance company's duty to defend a suit against an insured is determined solely on the basis of the allegations of the complaint in the underlying action. *St. Paul Surplus Lines Insurance Co. v. 1401 Dixon's Inc.*, 582 F.Supp. 865, 867 (E.D.Pa. 1984); *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 594, 105 A.2d 304, 307 (1954). This duty arises whenever the complaint filed by the injured party may potentially come within the policy's coverage. *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985) (citing inter alia *Gedeon v. State Farm Mutual Automobile Insurance Co.*, 410 Pa. 55, 58, 188 A.2d 320, 321–22 (1963); *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 589, 152 A.2d 484, 488 (1959)). "The duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy." *Pacific Indemnity*, 766 F.2d at 760 (citations omitted); *Charter Oak Fire Insurance v. Sumitomo Marine & Fire Insurance Co., Ltd.*, 750 F.2d 267, 272 (3d Cir. 1984) (citing inter alia *Seaboard Industries, Inc. v. Monaco*, 258 Pa.Super. 170, 176, 392 A.2d 738, 743 (1978)).

As heretofore pointed out, Rieder has been sued directly and as a third-party defendant in three separate lawsuits in the Superior Court of New Jersey. In the *Weinberg* action brought by the owners of the complex at the time of the fire, Associated Developers (of which Rieder was a partner) is named as a defendant and Robert Rieder is named as a third-party defendant. The plaintiffs in the *Weinberg* action seek damages for "extensive damage and destruction to the Twinbridge Apartments, and ... loss of rentals during the reconstruction period." The plaintiffs in the *Weinberg* action allege that "[t]he fire and resulting damages ... were caused by the negligence, carelessness and negligent omissions of ... [inter alia] Associated Developers...." The *Weinberg* plaintiffs further allege that Associated Developers negligently designed, planned and constructed the Twinbridge Apartments; inadequately and improperly inspected the design, plans and construction of the Twinbridge Apartments; and failed to use due and reasonable care under all of the circumstances. The defendants in the *Weinberg* action seek indemnification and contribution from Robert Rieder as third-party defendant based on his alleged negligence and recklessness.

In the *Cole* action, brought by tenants of the Twinbridge Apartment Complex, Associated Developers and Robert Rieder are named as defendants in the amended complaint. In the *Cole* action, the plaintiffs seek damages for "property damage, inconvenience, anguish and other damages." Plaintiffs in the *Cole* action allege that Associated Developers negligently constructed the apartment complex and that Robert Rieder negligently designed and/or engineered the apartment complex.

Finally, in the *Childress* action, brought by tenants of the complex at the time of the fire, "Associated Developers, a partnership and its partners, Robert Rieder, ..." are named defendants in the amended complaint. Plaintiffs seek damages for medical attention and treatment required due to injuries to one plaintiff's lungs, nose and throat caused by smoke inhalation, as well as damages for damage to and loss of their property. The plaintiffs in the *Childress* action allege that Associated Developers and Robert Rieder were negligent and were responsible for the defective condition of the apartment complex.

Cambridge asserts that on the basis of the alienated premises exclusion and the completed operations hazard exclusion, it has no duty to defend or indemnify Rieder in the *Weinberg* action. As heretofore pointed out, the *Weinberg* action was

brought by the owners of the Twinbridge Apartment Complex at the time of the fire. The owners seek recovery for damage and destruction to the complex, and for loss of rentals at the complex which resulted from the fire. They do not seek damages for bodily injury or for damage to property other than the Twinbridge Apartments. Rieder contends that the exclusions do not apply, and that in any event, the exclusions are ambiguous, and must be read in favor of the insured. The Court has determined that the alienated premises clause exclusion and the completed operations hazard exclusion are not ambiguous, that both exclusions are applicable and that, therefore, Cambridge has no duty to defend Rieder in the *Weinberg* action.

Generally, the law requires that whenever words are clear and unambiguous in an insurance policy, the Court must give the words their plain and ordinary meaning. *Northbrook Insurance Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982); *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 304, 469 A.2d 563, 566 (1983). An insurance policy's language should not be tortured to create ambiguities where none exist. *St. Paul Fire & Marine Insurance Co. v. United States Fire Insurance Co.*, 655 F.2d 521, 524 (3d Cir.1981). If there are no ambiguities in the insurance policy, the interpretation of the policy is a matter of law. *Id.* Where a policy is ambiguous, the ambiguous provisions are to be construed against the insurer and in favor of the insured. *Pacific Indemnity*, 766 F.2d at 761; *Standard Venetian*, 503 Pa. at 304, 469 A.2d at 566 (citing *Mohn v. American Casualty Co.*, 458 Pa. 576, 586, 326 A.2d 346, 351 (1974)).

The liability coverages of the policy are set forth in Section II of the "Special Multi-Peril Liability Insurance," Form MP–200. As set forth in this part of the policy, Cambridge agreed to provide liability coverage as follows:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, ...

Section II of the policy further provides:

IV. Additional Definition

When used in reference to this insurance (including endorsements forming a part of the policy):

"insured premises" means ... (2) premises alienated by the named insured (other than premises constructed for sale by the named insured), if possession has been relinquished to others, ...

The material facts concerning which there is no genuine issue reveal that Rieder did not construct the Twinbridge Apartment Complex for sale, that he alienated the complex in 1976 and that he relinquished possession of the complex to others. It is clear, therefore, that the Twinbridge Apartment Complex comes within the coverage of the Cambridge policy. Section II of the policy contains Exclusion (1), however, which provides:

> This insurance does not apply:
>
> \*   \*   \*   \*   \*   \*
>
> (1) to property damage to premises alienated by the named insured arising out of such premises or any part thereof.

Therefore, property damage *to* the alienated premises, i.e. the Twinbridge Apartment Complex, "arising out of" those premises, is excluded. Plaintiffs in the *Weinberg* action are seeking recovery for damage *to* the Twinbridge Apartment Complex caused by the fire which arose "out of" the complex, and lost rentals resulting

therefrom. The alienated premises exclusion specifically excludes coverage for the property damage *to* the complex for which the *Weinberg* action seeks recovery and thereby relieves Cambridge of its duty to defend Rieder in the *Weinberg* action.

Plaintiff's contention that the alienated premises exclusion and the definition of insured premises are ambiguous is not persuasive. It is clear that the definition of insured premises does include premises alienated by the named insured under certain circumstances. The definition, however, does *not* conflict with or override the alienated premises exclusion which specifically removes from the policy's coverage damage *to* the alienated premises. The Court concludes, therefore, that the Cambridge policy does not cover the recovery sought in the *Weinberg* action.

■ Cambridge further contends that it has no duty to defend Rieder in connection with the *Weinberg* action on the basis of the "completed operations hazard." While it is arguable that the "completed operations hazard" exclusion is inapplicable to the fire at the Twinbridge Apartment Complex, *see Pacific Indemnity*, 766 F.2d at 764, the Court finds that if it were relevant, the exclusion would also relieve Cambridge of its duty to defend Rieder in the *Weinberg* action.

The "completed operations hazard" is defined in the "Special Multi-Peril Policy Conditions and Definitions" segment of the policy as follows:

"completed operations hazard" includes bodily injury and property damage arising out of the operations or reliance upon a representation or warranty made at any time with respect thereto, but only if such bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured.

Under this definition, property damage to the Twinbridge Apartment Complex, i.e. the operations, would fall within the Cambridge policy's coverage. The property damage arose out of the complex, occurred after the complex was completed and occurred at the premises which were no longer owned or rented by Rieder. The "Extended Multi-Peril Liability Endorsement," however, contains the "completed operations hazard" exclusion. The endorsement provides

This endorsement modifies such insurance as is afforded by the provisions of the policy related to the following: COMPREHENSIVE GENERAL LIABILITY INSURANCE

\*   \*   \*   \*   \*   \*

BROAD FORM PROPERTY DAMAGE

.   .   .   .   .

This insurance does not apply:

.   .   .   .   .

(3) with respect to the completed operations hazard, to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

Liability for damage *to* the "work performed," i.e. the Twinbridge Apartment Complex, is excluded. When there is a claim for damage *to* work performed by the insured, e.g. a completed building, the exclusion applies to release the insurer from liability. *Southwest Forest Industries, Inc. v. Pole Buildings, Inc.*, 478 F.2d 185 (9th Cir.1973); *Swan Construction Co., Inc. v. Bituminous Casualty Corp.*, 588 F.Supp. 65 (E.D.Mo.1984), *aff'd*, 767 F.2d 929 (8th Cir.1985). *See also Standard Venetian*, 503 Pa. 300, 469 A.2d 563. The *Weinberg* action seeks recovery for damage *to* the complex and is therefore excluded from the Cambridge policy's coverage by the "completed operations hazard" exclusion.

■ The Court concludes, therefore, that both the alienated premises exclusion and the completed operations hazard exclusion relieve Cambridge of the duty to defend Rieder in the *Weinberg* action. These exclusions, however, are inapplicable to both the *Cole* and *Childress* actions, wherein

the plaintiffs do not seek damages for property damage *to* the apartment complex; rather, they seek damages for bodily injury and damage to their own property.

Cambridge next asserts that the underlying New Jersey lawsuits claim that Rieder erred in the rendering of professional services and are therefore excluded from the Cambridge policy's coverage. Cambridge contends that professional negligence is specifically excluded from the insurance policy relying on the "Extended Multi-Peril Policy Conditions and Definitions" which includes an amended definition of "incidental contract" and which contains exclusions related to liability assumed by the insured under any incidental contract wherein the indemnitee of the insured is an architect, engineer or surveyor. These exclusions are in no way applicable to the claims asserted in the underlying lawsuits. The material facts in this case concerning which there is no genuine issue provide no indication that the claims in the underlying lawsuits are based on any contract of indemnity wherein the indemnitee of the insured is an architect, engineer or surveyor. Therefore, the exclusions are inapplicable and do not relieve Cambridge of its duty to defend Rieder in connection with the *Cole* and *Childress* actions.

In connection with the *Childress* action, Cambridge further asserts that it owes no duty to defend Rieder because no named insured is named as a defendant. Cambridge's contention is without merit. As heretofore pointed out, Robert Rieder is named in the *Childress* action and Robert Rieder is a named insured in the Declarations of the Cambridge insurance policy. The definitions and exclusions Cambridge asserts in support of its argument do not act to preclude Cambridge's duty to defend and indemnify Rieder in connection with the *Childress* action.

■ Finally, Cambridge asserts that a one year "statute of limitation" bars Rieder's recovery. Cambridge refers, however, to a "limitation of suit" clause contained in the "Special Multi-Peril Policy Conditions and Definitions" section of the policy. The "limitation of suit" clause is only applicable to Section I, i.e. Property Coverage. This declaratory judgment action, on the other hand, is concerned with Section II, i.e. Liability Coverage. Cambridge does not contend, nor does the record reflect, that Rieder did not fulfill its duties under the applicable clause in the "Special Multi-Peril Policy Conditions and Definitions" which requires the insured to immediately notify the insurer if suit is initiated against the insured.

As heretofore pointed out, bodily injury and property damage to property other than the alienated premises or the completed operations *are* within the scope of the policy's coverage. Cambridge has not established that any *other* portion of the policy excludes coverage for bodily injury and property damage to property other than the Twinbridge Apartments. Cambridge, therefore, does have a duty to defend Rieder in the *Cole* and *Childress* actions brought in the Superior Court of New Jersey. Cambridge has obligated itself to defend and indemnify Rieder by the terms of the insurance policy. Because neither the *Cole* nor *Childress* claims are excluded from the policy's coverage, Cambridge must defend and indemnify Rieder in connection therewith.

In this Court's Memorandum and Order of April 8, 1986, summary judgment was entered in favor of Rieder and against Cherokee Insurance Company, another defendant in this declaratory judgment action. Cherokee was ordered to defend and indemnify Rieder in all three actions in the Superior Court of New Jersey. That decision was based upon the ground that the Cherokee policy covered the premises in question under the definition of alienated premises. Cherokee, however, never raised the alienated premises exclusion nor the completed operations hazard exclusion in its Motion for Summary Judgment (filed March 8, 1984), in its Supplemental Memorandum in Support of its Motion for Summary Judgment (filed April 3, 1984), in its Reply Memorandum (filed June 17, 1984) or in its Motion in Opposition to Rieder's Mo-

tion for Summary Judgment (filed March 7, 1986). Furthermore, Cherokee never supplied the Court with any portion of the policies containing an alienated premises exclusion or a completed operations hazard exclusion until it filed its untimely motion for reconsideration on April 28, 1986.