**BORDEN, INC., Plaintiff,**

v.

**AFFILIATED FM INSURANCE CO., Defendant.**

**No. C–2–85–809.**

United States District Court, S.D. Ohio, E.D.

Nov. 4, 1987.

Colleen Nissl, Columbus, Ohio, Irene C. Warshauer, Rosemary H. Yeoh, New York City, for plaintiff.

Thomas L. Long, Columbus, Ohio, Donald B. Hilliker, Linda J. Chase, Chicago, Ill., for defendant.

## DECISION AND ORDER

GRAHAM, District Judge.

The plaintiff, Borden, Inc., is a New Jersey Corporation and has its principal place of business in Columbus, Ohio. The defendant, Affiliated F.M. Insurance Company ("Affiliated") is a Rhode Island Corporation and has its principal place of business in Johnston, Rhode Island. In 1974, plaintiff purchased a first layer excess liability policy from defendant. This policy provided for a $500,000 retained limit for which Borden was to be responsible. This coverage remained in effect until 1978.

On April 16, 1982, Amoco Oil Company filed a complaint against Borden in the United States District Court for the Southern District of Texas. The complaint alleged that Borden fraudulently concealed the presence of hazardous wastes on a parcel of land in Texas sold by Borden to Amoco. This complaint was later amended to seek response costs under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq.

Borden notified Affiliated of Amoco's claims on March 6, 1984. Affiliated refused to defend Borden and asserted that Amoco had not alleged an "occurrence" under the policy, that the pollution and nuclear exclusions applied to the claims, and that Borden had not given timely notice of the claims. Affiliated later notified Borden that the premises alienated clause also precluded coverage.

Borden subsequently filed a complaint in the Court of Common Pleas of Franklin County, Ohio, seeking a declaratory judgment that Affiliated is obligated to defend and indemnify Borden in the Amoco action. On petition of the defendant, that action was removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. This Court has jurisdiction by virtue of diversity of citizenship under 28 U.S.C. § 1332.

This case is now before the Court upon the parties' cross-motions for summary judgment. The standard for granting summary judgment is set forth in Fed.R.Civ.P. 56(c) which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In considering whether there is a genuine issue of material fact, the Court must inquire whether:

A fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The [court's] inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In making this inquiry, all evidence of the opposing party must be taken as true and all justifiable inferences are to be drawn in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970). However, in ruling on a motion for summary judgment the Court must "view the evidence present through the prism of the substantive evidentiary burden" which the plaintiff must meet. *Anderson*, 106 S.Ct. at 2513. See also *Celotex Corp. v. Cathrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a case founded on diversity of citizenship, a federal court must apply the law of the state in which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This includes the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In contracts cases, Ohio

courts examine several factors to determine which state has the most significant relationship to the contract. These include the place of contracting, the place of negotiation, the place of performance, the situs of the subject matter, and the domicile of the parties. *Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284, 473 N.E. 2d 807 (1984).

In the instant case, the insurance contracts were negotiated and entered into in Ohio. The place of performance and the subject matter were to be in all the states, including Ohio, where Borden conducts its operations. Borden has its principal place of business in Ohio, while Affiliated is located in Rhode Island. In light of these facts, the Court concludes that Ohio has the most significant relationship to the insurance contracts at issue.

■ Affiliated argues that coverage is precluded by the pollution exclusion contained in the policies. That exclusion states that the policy shall not apply:

to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Affiliated asserts that this clause applies to Amoco's claims which allege that Borden deposited radioactive waste materials on the land which was sold to Amoco. Borden, on the other hand, contends that Amoco's allegations fall within the "sudden and accidental" exception to the exclusion.

Borden maintains that the release of pollutants is "sudden and accidental" unless both the discharge and the resulting harm were expected or intended by the insured. According to Borden, the words "sudden and accidental" are ambiguous and must be construed in favor of the policyholder. In support of its contention, Borden relies on *Buckeye Union Insurance Co. v. Liberty Solvents & Chemicals Co., Inc.*, 17 Ohio

App.3d 127, 477 N.E.2d 1227 (1984). That case held that where the insured did not intend the damage caused by hazardous wastes, the release could be considered "sudden and accidental" from the viewpoint of the insured.

Several cases from other jurisdictions also support Borden's position. In *Jackson Township Municipal Utilities Authority v. Hartford Accident & Indemnity Co.*, 186 N.J.Super. 156, 451 A.2d 990 (1982), the court held that only a manufacturer which continues polluting despite its knowledge of harmful effects will be excluded by the pollution clause. In the court's view, the pollution exclusion was simply a restatement of the definition of "occurrence." Other cases adopting this view include *Niagara County v. Utica Mutual Insurance Co.*, 80 A.D.2d 415, 439 N.Y.S.2d 538 (1980) and *United Pacific Insurance Co. v. Van's Westlake Union, Inc.*, 34 Wash.App. 708, 664 P.2d 1262 (1983).

■ This Court is not persuaded to adopt the approach of these courts. While the opinion of the Ohio Court of Appeals in *Buckeye* is entitled to some deference, it is not absolutely binding on this Court. See *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). This Court is convinced that the Ohio Supreme Court would not adopt the construction of the pollution exclusion set forth in *Buckeye*.

The Ohio Supreme Court has stated that: It is well-settled in Ohio that insurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties.

*Rhoades v. Equitable Life Assurance Society*, 54 Ohio St.2d 45, 374 N.E.2d 643, 644 (1978). See also *Jackson v. Metropolitan Life Insurance Co.*, 34 Ohio St.2d 138, 296 N.E.2d 679 (1973). Moreover, words in an insurance policy are to be given their commonly accepted meaning unless that would

lead to an absurd result. *Olmstead v. Lumbermens Mutual Insurance Co.*, 22 Ohio St.2d 212, 259 N.E.2d 123 (1970).

This Court does not find the pollution exclusion involved in this case to be ambiguous. The "sudden and accidental" exception expressly applies to the "discharge, dispersal, release or escape" of the pollutants, rather than to the harm caused by the pollutants. "Sudden," in its common usage, means "happening without previous notice or with very brief notice," while "accidental" means "occurring sometimes with unfortunate results by chance alone." Webster's Third New International Dictionary, (1968). The meaning of these terms is clear and should not be twisted simply to provide insurance coverage when the courts deem it desirable. See Note, *The Pollution Exclusion Clause Through the Looking Glass*, 74 Geo.L.J. 1237, 1240 (1986).

The Supreme Court of North Carolina has recognized the fallacy of reading the pollution exclusion as equivalent to the "occurrence" definition. *Waste Management v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E.2d 374 (1986). That court noted that "[u]nlike the focus of the 'occurrence' language in the policies' broad coverage provisions, the focus of the 'pollution exclusion' is *not* upon intention, expectation, or even foresight." 340 N.E.2d at 380 (emphasis in original). Accordingly, the court held that the exclusion precluded coverage where the underlying complaint alleged that groundwater became contaminated due to the regular dumping of wastes by the insured.

Several other courts have held that the pollution exclusion applied to the release of wastes on a regular basis or in the ordinary course of business. In *Techalloy Co. v. Reliance Insurance Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984), the court stated that where the complaint alleged discharges over a period of twenty-five years, there was no sudden and accidental event. Similarly, an Indiana court held that where the insured was aware that its pollution control system frequently malfunctioned, the emission of gases was not sudden and acciden-

tal. *Barmet of Indiana, Inc. v. Security Insurance Group*, 425 N.E.2d 201 (Ind.Ct. App.1981). See also *Great Lakes Container Corp. v. National Union Fire Insurance Co.*, 727 F.2d 30 (1st Cir.1984); *Fischer & Porter Co. v. Liberty Mutual Insurance Co.*, 656 F.Supp. 132 (E.D.Pa.1986); *Transamerica Insurance Co. v. Sunnes*, 77 Or.App. 136, 711 P.2d 212 (1985).

In the case at bar, Amoco's complaint alleges that Borden regularly deposited radioactive wastes on its property as part of its production of phosphoric acid. Moreover, an officer of Borden has admitted that the company deposited phosphogypsum on the property from 1964 to 1970 and that the pile of phosphogypsum is 35 feet high and covers 30 to 40 acres. Rosenzweig affidavit at paragraphs 8 and 9. Clearly, this is not an allegation of a "sudden and accidental" event. Rather, it is precisely the type of activity which the pollution exclusion was drafted to preclude. See *Waste Management*, 340 S.E.2d at 381. The Court must give effect to the intent of both parties. Accordingly, the Court holds that the allegations in the Amoco complaint are within the pollution exclusion and, therefore, Affiliated has no contractual obligation to defend or indemnify Borden.

■ Affiliated also argues that coverage is precluded by the "premises alienated" exclusion. That provision states that the policy does not apply to "premises alienated by the named insured, arising out of such ... premises or any part of such ... premises." Affiliated maintains that this clause applies to Amoco's allegations, which concern a parcel of land sold by Borden to Amoco. Borden argues, on the other hand, that coverage is not precluded because Amoco claims damages for the pollution of the entire Texas City environment as well as to its own property.

■ Even if it had standing to do so, Amoco does not make any such claim. Its complaint is grounded solely on the alleged failure of Borden to disclose the presence of hazardous wastes on land which it conveyed to Amoco. Therefore, Borden's contention is without merit. Alternatively, Borden argues that the term "premises"

refers only to buildings and not to land. In the law of property, however, "premises" means both land and buildings thereon. See Black's Law Dictionary (5th ed. 1979); *Wilmington Island Construction Co., Inc. v. Cincinnati Insurance Co.*, 179 Ga.App. 477, 347 S.E.2d 308 (1986).

The "premises alienated" exclusion is also unambiguous and clearly applies to the case at bar. As stated above, the Court must give effect to the clear meaning of a written contract and holds that the exclusion relieves Affiliated of any duty to defend or indemnify Borden. Since Affiliated is entitled to judgment on the basis of the pollution and premises alienated exclusions, the Court need not address its other contentions. Accordingly, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.

Final judgment is rendered in favor of the defendant and the costs of this action are assessed against the plaintiff.

It is so ORDERED.