McKELLAR DEVELOPMENT OF NEVADA, INC., McKELLAR DEVELOPMENT GROUP, INC., FKA McKELLAR HOLDING COMPANY, INC.; McKELLAR & ASSOCIATES, INC.; AND JAMES A. McKELLAR, JR., APPELLANTS, v. NORTHERN INSURANCE COMPANY OF NEW YORK, AND MARYLAND CASUALTY COMPANY, RESPONDENTS.

No. 21258

September 3, 1992                                    837 P.2d 858

*Foley & Jones,* Las Vegas, for Appellants.

*Parnell & Associates,* Las Vegas; *Goldbeck & Ebert,* San Diego, California, for Respondents.

*McDonald, Carano, Wilson, McCune, Bergin, Frankovich & Hicks,* Reno, for Amici Curiae Associated General Contractors of America, Inc. Las Vegas Chapter and Northern Nevada Chapter and Nevada Association of Mechanical Contractors, Inc.

## OPINION ON REHEARING

*Per Curiam:*

This is an appeal from a summary judgment in an action for declaratory relief.[1] The district court declared that insurance policies issued by respondents to appellants do not cover claims made by the purchaser of an apartment complex constructed by appellants.

---

[1] On August 27, 1991, this court issued an opinion affirming the judgment of the district court. On October 28, 1991, this court entered an order granting rehearing and withdrawing our opinion. *See* McKellar Development v. Northern Insurance Company, 107 Nev. 562, 816 P.2d 456 (1991). We now issue this opinion in place of our previously withdrawn opinion.

Appellants designed and built the Woodside Village apartment complex in Las Vegas, Nevada. In May of 1986, Woodside Village was sold to Integon Life Insurance Company and North American Mortgage Investors (hereinafter "Integon"). In March of 1987, Integon filed suit against appellants seeking rescission of the sale agreement or, alternatively, money damages. The complaint alleged that appellants had defectively designed and constructed the project and that, as a result, the buildings were falling apart. The source of the problem was apparently faulty soil compaction, resulting in the sinking and breakup of the apartment buildings. Appellants had relied on subcontractors to do the soil compaction.

At the time, appellants had a comprehensive general liability ("CGL") policy with respondents. Respondent Northern Insurance Company of New York ("Northern") had issued three annual CGL policies to appellants during the years of 1985 through 1988. Maryland Casualty Company ("Maryland") had issued three secondary CGL policies to appellants for the same period.

Upon the filing of the Integon complaint, appellants informed respondents that they were potentially liable for the damage claim. Respondents brought this action for declaratory relief. The district court granted respondents' motion for summary judgment, concluding that the Integon claim was excluded from coverage under the policies' provisions.

Appellants argue that the work of subcontractors is covered by the policies. The policies in this case contain a broad term granting coverage, but then limit that coverage by numerous specific exclusions. Further, the policies contain a broad form property damage ("BFPD") endorsement for which appellants paid an additional premium.[2] Appellants argue that the BFPD endorsement provides coverage for the work of subcontractors.

The BFPD endorsement does not contain a separate term granting coverage, but instead works by modifying exclusions contained in the basic policy. In particular, the BFPD endorsement modifies the completed operations hazard exclusion of the basic policy. The unmodified completed operations hazard exclusion provides as follows:

The insurance does not apply:

(o) *to property damage to work performed by or on behalf of the named insured* arising out of the work or any portion

---

[2] The Maryland policies also contain a similar endorsement referred to as the "Contractor's Endorsement."

thereof, or out of materials, parts or equipment furnished in connection therewith.

(Emphasis added.)

The BFPD endorsement modifies the exclusion as follows:

VI. BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE (Including Completed Operations)

. . . .

Exclusions (k) and (o) are replaced by the following:

(3) with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as "including completed operations" *to property damage to work performed by the named insured* arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.

(Emphasis added.)

Thus, the BFPD completed operations hazard exclusion eliminates the phrase "or on behalf of" and applies only to work performed "by the named insured." We agree with appellants that the elimination of the phrase "or on behalf of" indicates that the work of subcontractors was intended to be covered by the policies. *See* Fireguard Sprinkler Systems v. Scottsdale Ins., 864 F.2d 648 (9th Cir. 1988);[3] Maryland Casualty Co. v. Reeder, 221 Cal.App.3d 961 (Cal.Ct.App. 1990). Because appellants relied on subcontractors to do the soil compaction, the BFPD endorsement provides coverage.

Respondents argue, however, that the products exclusion contained in both the Northern and Maryland policies operates to exclude coverage of the Integon claim, notwithstanding the BFPD endorsement. The products exclusion states in part as follows:

The insurance does not apply to . . . property damage to:

. . . .

---

[3] In *Fireguard,* the court concluded that the phrase "or on behalf of" contained in a similar CGL policy referred to the work of subcontractors. Thus, because the phrase was omitted from the endorsement, damage arising from a subcontractor's work was not excluded. In reaching this conclusion, the *Fireguard* court examined a circular prepared by the Insurance Service Office (ISO). The ISO prepares standard form provisions that are used to draft policies. The ISO prepared a provision upon which the BFPD completed operations hazard exclusion appears to be based. The circular explained that the exclusion is intended to "exclud[e] only damages caused by the named insured to his own work. Thus, . . . [t]he insured would have coverage for damage to his work arising out of a subcontractor's work [and] [t]he insured would have coverage for damage to a subcontractor's work arising out of the subcontractor's work." *Fireguard,* 864 F.2d at 652.

(b) the insured's products arising out of such products.
. . .

Respondents argue that the apartment complex was appellants' product and therefore damage arising out of the complex is excluded. They contend that a completed building project is a product for purposes of the insurance policies.

In *Fireguard,* the United States Court of Appeals for the Ninth Circuit examined a similar products exclusion. The court concluded that in order for the products exclusion to apply, the insurer must show that: (1) damage was done to the insured's product, and (2) the damage arose out of the insured's product. *Fireguard,* 864 F.2d at 654. Appellants presented facts to the district court showing that the damage in this case arose out of the site preparation. Because site preparation is a service and not a product, we conclude that the products exclusion does not exclude coverage of the Integon claim.

Respondents further argue that the alienated premises exclusion contained in Northern's policies is applicable. This exclusion provides as follows:

This insurance does not apply:
(1) to property damage to premises alienated by the named insured arising out of such premises or any part thereof.

Respondents assert that this exclusion applies because appellants alienated the apartment complex when they sold it to Integon, and the damage arose out of the complex.

Nevertheless, we conclude that the alienated premises exclusion was not intended to apply to the work of subcontractors. First, the interpretation offered by respondents would severely limit the coverage granted by the BFPD endorsement, a coverage for which appellants paid an additional premium. Appellants provided the district court with insurance industry publications stating that the alienated premises exclusion was not intended to apply in this manner.[4] Second, the faulty work of the subcontrac-

---

[4]One industry publication states as follows:

[The alienated premises exclusion] removes property damage coverage to premises alienated (e.g., sold) by the named insured arising out of the premises or any part thereof. This exclusion could severely limit coverage granted under the BFPD endorsement. Consider the contractor who constructs property such as office buildings, houses, etc., retains title, and later sells that property. This is often the case with real estate developers. Once the sale has taken place, the contractor or developer would have no property damage coverage for damage to the

tors in this case was completed before appellants alienated the premises. Thus, the damage to the apartment complex arguably occurred before alienation. Consequently, summary judgment was inappropriate on this issue.

Accordingly, we reverse the order of the district court granting summary judgment, and we remand for further proceedings.

alienated premises even though he has purchased completed operations coverage and the proper BFPD endorsement. *This interpretation is outside the scope of intent of the policy, but it has been taken on occasion by insurers.*

J. Gibson, *Broad Form Property Damage Coverage: Analysis, Application and Alternatives* 12-15 (International Risk Management Institute, Inc. 2d ed. 1982) (emphasis added).