[No. D016980. Fourth Dist., Div. One. Feb. 28. 1994.]

PRUDENTIAL-LMI COMMERCIAL INSURANCE COMPANY, Plaintiff and Appellant, v.
RELIANCE INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Gibbs, Eppsteiner & Stagg, Stuart M. Eppsteiner and Mark F. Marnell for Plaintiff and Appellant.

Rosenfeld, Meyer & Susman, James L. Seal and Ray Tamaddon for Defendants and Respondents.

## OPINION

**KREMER, P. J.**—In this internecine struggle within the insurance industry, plaintiff Prudential-LMI Commercial Insurance Company has argued with defendants United Pacific Insurance Company and Reliance Insurance Company (collectively United Pacific) over the interpretation of this court's decision in *Maryland Casualty Co.* v. *Reeder* (1990) 221 Cal.App.3d 961 [270 Cal.Rptr. 719]. Distinguishing *Maryland Casualty*, the trial court concluded that a "premises alienated" exclusion in the United Pacific commercial general liability (CGL) policy applied to preclude coverage, and summary judgment was entered in favor of United Pacific. We reject the proffered distinction of *Maryland Casualty*, as well as several other arguments made by United Pacific, and accordingly reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1979, the insured in the underlying action, 7500 Parkway Associates (Associates), purchased a recently constructed six-building residential complex from Newport Dunes, Inc., the original developer of the complex. Although the units in the complex had been designed as apartments, Associates obtained government approval to market them as condominiums. The condominium owners' association was formed in August 1980 and title to the common areas was transferred from Associates to the association.

Associates obtained successive CGL policies from Prudential-LMI and United Pacific. The United Pacific policy followed the Prudential-LMI policy and was effective between April 1980 and April 1983.

The condominium association filed suit against Associates and other defendants in 1985 alleging various construction defects. Both insurance companies agreed to defend the lawsuit; United Pacific's defense was conditioned on a reservation of its right to contest coverage. The suit was later settled for an amount which included a $1 million policy limits contribution from Prudential-LMI and $200,000 from United Pacific. Claiming that United Pacific was responsible for an equal share of the settlement, Prudential-LMI then filed this action seeking equitable contribution.

The United Pacific policy is the only policy of relevance to this case. It is entitled a "Special Businessowners Policy" and provides both property damage and liability coverage. The comprehensive business liability section is what concerns us here. In it, United Pacific promised to pay Associates "all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which this insurance applies." A long list of exclusions follows this apparently broad coverage provision. One, using "Broad Form Endorsement" language, precludes coverage for property

damage arising out of the insured's "completed operations" only if the defective work was actually "performed *by the named insured* . . . ."[1] (Italics added.) Another, the "premises alienated" exclusion, eliminates coverage for "property damage to premises alienated by the named insured arising out of such premises or any part thereof." United Pacific relies principally on this latter exclusion in arguing that its policy provided no coverage to Associates.

## DISCUSSION

In *Maryland Casualty Co.* v. *Reeder, supra,* 221 Cal.App.3d 961, this court addressed the question of insurance coverage under a CGL policy in a substantially similar factual context. The underlying construction defect lawsuit was filed by various individual condominium owners and their homeowners association against persons and entities involved in the development of the condominium project. These defendants were named insureds under a liability policy issued by Maryland Casualty. The standard Maryland policy excluded coverage for damage arising out of any work "performed by or on behalf of the named insured," thus effectively precluding recovery for construction defects. These insureds, however, had paid an additional premium for a "broad form endorsement" which limited the "work performed" exclusion to work performed *by*, rather than *on behalf of*, the named insured. (*Id.* at pp. 971-972.) Our opinion quoted an August 1982 Fire Casualty and Surety (FC & S) bulletin explaining that the effect of the broad form endorsement was to provide coverage for damage caused by a developer's " 'completed work when the damage arises out of work performed by someone other than the named insured, such as a subcontractor . . . .' " (*Id.* at p. 972.) Because subcontractor work appeared to be the basis for the claims by the plaintiff owners and homeowners association, we held that coverage was not precluded as a matter of law.

Maryland Casualty argued that even if the "work performed" exclusion was inapplicable, coverage was still not available because of the "premises alienated" exclusion. We first explained that ". . . where an insured is not an owner the exclusion does not apply." (*Maryland Casualty Co.* v. *Reeder, supra,* 221 Cal.App.3d at p. 977.) Coverage as to several nonowner insureds was therefore unaffected. We went on to explain that the exclusion should not affect coverage as to an insured who sold his interest before issuance of the policy and was thus a nonowner at all times during the policy period. (*Id.* at p. 978.) Finally, we considered the situation of the developer, Twelve Trees, which owned the property at the time the policy was issued. Twelve

---

[1] The uncorrected text of the policy reads in relevant part: "[T]his policy does not apply . . . to damage to property . . . with respect to the completed operations hazard, to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith . . . ."

Trees conveyed the individual units to the plaintiff homeowners in the underlying construction defect lawsuit. Acknowledging that the 1982 FC & S commentary suggested the exclusion would preclude coverage for a developer in Twelve Trees' position (*id.* at p. 978), we noted the apparent functional unfairness of an insurance policy which purports to provide coverage for a developer's completed operations but would then deny coverage if the developer happened to be an owner at the time the policy was issued. (*Id.* at pp. 977-978.) We then cited a different insurance industry source commenting on the 1986 change to the "premises alienated" exclusion which limited it to situations where the premises were first "occupied, rented, or held for rental by [the insured]." (*Id.* at p. 978.) This commentary argued that the 1986 change "was meant to clarify, rather than alter" the coverage provided by a CGL policy with a broad form endorsement. Our opinion concluded, "[W]e are inclined to agree." (*Ibid.*) Because there was no evidence Twelve Trees had ever occupied or rented the condominiums, we declined to apply the "premises alienated" exclusion so as to defeat Twelve Trees' claim of coverage.

■ Our conclusions in *Maryland Casualty Co.* v. *Reeder, supra,* 221 Cal.App.3d 961 were based on the intent underlying the "premises alienated" exclusion. That intent is to "deny coverage to an insured who has failed to repair property prior to its sale or who has failed to disclose the existence of a defect in the premises at the time of sale." (Wielinski & Gibson, Broad Form Property Damage Coverage (3d ed. 1992) p. 99 [hereafter cited as Wielinski].) Although "it was never intended to apply to the completed operations of a contractor" (*ibid.*) where units were "construct[ed] for the purpose of resale" (*id.* at p. 103), ". . . it has been used in conjunction with other 1973 CGL policy provisions to preclude coverage for construction-related property damage claims that probably should have fallen within the coverage intent of the policy." (*Ibid.*) Wielinski's commentary, published by the International Risk Management Institute, cites and discusses *Maryland Casualty Co.* v. *Reeder* with approval, noting that the opinion "respected the coverage intent and declined to apply the exclusion to deny coverage for a developer that had developed, and then sold, a condominium project".[2] (Wielinski, *supra,* at pp. 101-102.)

■ As we implied in *Maryland Casualty Co.* v. *Reeder, supra,* 221 Cal.App.3d 961, insurance industry publications are particularly persuasive

---

[2]Wielinski cites *Rieder* v. *Cherokee Ins. Co.* (E.D.Pa. 1986) 635 F.Supp. 699 as an example of a situation in which the "premises alienated" exclusion was intended to apply. In that case, the insured built an apartment complex, operated and managed the complex as a landlord for four years, and then sold it. Four years later the insured was sued by the new owner and certain tenants when a fire destroyed the complex. Thus even under the 1986 revisions to the CGL policy, the insured would not have been entitled to coverage because the property had either been "rented" or "held for rental."

as interpretive aids where they support coverage on behalf of the insured. Ultimately, the test is whether coverage is "consistent with the insured's objectively reasonable expectations." (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) But it is difficult to characterize as "objectively unreasonable" an interpretation which would result in coverage which is proffered and supported by insurance industry experts.[3] ■ Such is the case with the interpretation of the "premises alienated" exclusion adopted by this court in *Maryland Casualty Co.* v. *Reeder* which we reaffirm here.

As it did in the trial court, United Pacific argues that our *Maryland Casualty* rationale was expressly based on the fact that the insureds in that case paid a defined additional premium for the broad form endorsement. Here, in contrast, the broad form endorsement language is contained in the main body of the policy. The asserted distinction is one without a functional difference. Whether the exclusion-limiting language of the broad form endorsement is found in the policy itself or in a separate document separately paid for, the insured necessarily pays more for broader coverage. As we have explained, the basis for our *Maryland Casualty* decision was twofold: (1) the illogic of an interpretation which would have coverage for construction defects arising from the work of subcontractors turn on whether the contractor or developer owned the premises before it was sold to the ultimate purchasers; and (2) the historic development of the "premises alienated" exclusion, as traced by insurance industry experts, which demonstrates that the purpose of the provision was never to deny coverage to developers and contractors for defects in completed projects arising from the work of others. Neither of these bases is affected by the manner in which the insurer chooses to market its policy options or allocate portions of an aggregate premium to various coverages.

United Pacific also relies on the fact that Associates purchased the condominium complex after construction had been completed but before the units had ever been occupied. It contends that because Associates performed no "work" and completed no "operations" with respect to the complex, it had no risks covered by the Completed Operations Coverage and therefore our *Maryland Casualty Co.* v. *Reeder* rationale should not apply. Again, however, United Pacific's argument lacks a functional foundation. In its role as a successor developer, Associates' "operations" and its "work" were the

---

[3]It is for this reason that we are unpersuaded by the criticism of *Maryland Casualty Co.* v. *Reeder, supra,* 221 Cal.App.3d 961 contained in *American Star Ins. Co.* v. *Insurance Co. of the West* (1991) 232 Cal.App.3d 1320, 1330-1331 and footnotes 8 and 9 [284 Cal.Rptr. 45]. (See also *ACL Technologies, Inc.* v. *Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1793, fn. 47 [22 Cal.Rptr.2d 206].)

conversion and marketing of the condominium units. Although the record here does not conclusively establish that Associates performed no finishing work on the complex,[4] a developer's insurance coverage cannot turn on the stage of construction at which it took possession.

In summary, the United Pacific policy provided coverage for Associates' completed operations which, by negative implication from the "work performed" exclusion, applies to the insured's liability for property damage arising from the work of persons other than the insured developer. Here we have concluded that these completed operations include the work of Associates in converting and marketing the condominium units. Although the standard 1973 version of the "premises alienated" exclusion can be read to preclude coverage for damage to portions of any property sold by the insured, as we held in *Maryland Casualty Co.* v. *Reeder, supra,* 221 Cal.App.3d 961, such an interpretation makes little sense functionally and is inconsistent with the intent underlying the exclusion as described by insurance industry sources which have clarified that intent in more recent versions of the standard CGL policy. Consistent with *Maryland Casualty,* we hold here that the "premises alienated" exclusion does not defeat coverage as a matter of law. Accordingly, the trial court erred in granting summary judgment in favor of United Pacific.

DISPOSITION

Judgment reversed. Appellant shall recover costs.

Todd, J., and Huffman, J. concurred.

---

[4]United Pacific relies on a statement by counsel for Prudential-LMI during argument to the trial court. In discussing the defective work responsible for the property damage, counsel explained that Associates "never did a stitch of work on the job . . . ." Even were it relevant, we do not believe this statement, taken out of context and unsupported by other evidence, would satisfy United Pacific's burden of establishing that Associates performed no work on the project.