Samuel F. FEJES, Jr., Appellant,

v.

ALASKA INSURANCE COMPANY, INC., American International Surplus Insurance Lines, Inc., American International Speciality Lines, Inc., American International Group, Inc., and John Does I through V, et al., Appellees.

No. S–8372.

Supreme Court of Alaska.

Aug. 20, 1999.

Rehearing Denied Sept. 29, 1999.

---

Peter J. Maassen, Ingaldson Maassen, P.C., Anchorage, for Appellant.

Charles M. Merriner, Pletcher, Weinig & Merriner, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

MATTHEWS, Chief Justice.

## I. INTRODUCTION

A contractor was sued by a homeowner when an improperly constructed curtain drain failed and caused a septic system to stop functioning. The system and the drain were constructed by a subcontractor. The question presented is whether the contractor's comprehensive general liability policy covered the suit. The superior court concluded that there was no coverage and granted summary judgment to the insurer. Viewing the facts in the light most favorable to the contractor we conclude that the facts giving rise to the suit are within the coverage of the policy. We therefore reverse.

## II. FACTS AND PROCEEDINGS

In reviewing a grant of summary judgment we "must view the facts in the light most favorable to the non-moving party."[1] The following facts are stated from that perspective.

Samuel Fejes was the sole shareholder and chief executive officer of Becharof Corporation. Alaska Insurance Company, Inc., (AIC) insured Becharof under a comprehensive general liability policy with a broad form property damage liability endorsement. The policy covered Fejes as an additional insured.

In 1985 and 1986 Becharof constructed a house on a lot owned by Fejes and his business partner. Becharof subcontracted the installation of the on-site septic system for the house, including a "curtain drain," to Fejes Development, a company owned by Fejes's brother, Chris, in which Fejes had no interest. The curtain drain was needed to prevent groundwater from invading the septic system's leach field.

In 1986 Becharof sold the house to Kathleen Reeves. At the time of the sale Becha-rof assured Reeves of the septic system's fitness, and that it had been inspected and approved. But the curtain drain was improperly constructed; it became clogged with silt and failed soon after the sale, destroying the septic system's functionality. The problems resulting from the failure went unnoticed until Reeves attempted to sell her lot in 1993. At that point she was forced to replace the system with a large holding tank.

Reeves sued Fejes in May of 1993 for damages arising from the failed septic system, asserting fraud and misrepresentation. In February 1995 Fejes tendered his defense to AIC. AIC rejected the tender and denied that it had a duty to defend Fejes, contending that there was no coverage. Fejes responded by reminding AIC of its obligation to defend even if the face of the complaint did not allege facts within policy coverage, so long as AIC knew, or a reasonable investigation would uncover, underlying facts which would bring the case within policy coverage. Fejes theorized that the curtain drain had failed, damaging the septic system. He claimed that this sequence of events was within the policy's coverage. AIC refused to defend.

Fejes and Reeves then agreed to an abbreviated bench trial. The superior court found that the curtain drain had failed due to a defect in the subcontractor's workmanship and had damaged the septic system. Although Fejes was not aware of this defect, he was found liable for breach of warranty. The court entered judgment against Fejes for $104,148.23. He incurred legal fees and costs of $35,689.68 in defending the suit.

Fejes then commenced the present action against AIC, seeking indemnity for the judgment and payment of his legal expenses. The superior court granted AIC's cross-motion for summary judgment, ruling that the policy did not cover the allegations in Reeves's suit or the underlying facts known or reasonably ascertainable by AIC.

Fejes appeals.

---

1. _Mathis v. Sauser,_ 942 P.2d 1117, 1120 (Alaska 1997) (citing _Willner's Fuel Distribs., Inc. v. No-_ reen, 882 P.2d 399, 403 n. 7 (Alaska 1994)).

## III. STANDARD OF REVIEW

"We review a grant of summary judgment de novo, applying our independent judgment."[2] We will uphold summary judgment "if no issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law."[3] All reasonable inferences of fact are drawn in favor of the non-moving party.[4] The moving party bears the "initial burden of proving, through admissible evidence, the absence of genuine factual disputes and its entitlement to judgment."[5] If the moving party presents a prima facie showing that it is entitled to judgment, the burden shifts to the nonmoving party to show a "genuine issue for trial."[6]

## IV. DISCUSSION

### A. Interpretation of Insurance Policies

We interpret insurance policies in accordance with the following precepts. "[T]o the extent that there are no relevant unresolved or controversial facts, '[t]he construction of an insurance contract is a matter for the court.'"[7] A policy's meaning is determined by examining "the language of the disputed policy provisions, the language of other provisions in the policy, ... relevant extrinsic evidence, ... [and] case law interpreting similar provisions."[8] "[A]n insurance policy may be considered a contract of adhesion and as such should be construed so as to provide the coverage which a layman would reasonably have expected, given his lay interpretation of the policy language."[9] We therefore resolve ambiguities in the meaning of insurance contracts against the insurer.[10]

### B. Duty to Defend

"An insurer's duty to defend and its obligation to indemnify are separate and distinct contractual elements."[11] The insurer's duty to defend is broader than its duty to provide coverage.[12] The insurer may therefore be obligated to defend even where it has no ultimate liability under the policy.[13] "The duty to defend arises 'if the complaint on its face alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy.'"[14] Even if the complaint does not contain such allegations, the insurer has a duty to defend if facts underlying the complaint are within, or potentially within, the policy coverage and are known or reasonably ascertainable by the insurer.[15]

### C. Was There an "Occurrence"?

The comprehensive general liability policy provides insurance against claims for property damage caused by an "occurrence." An "occurrence" is an accident which results in property damage. The policy explains that an accident can include "repeated and continuous exposure to conditions" which results in

2. Christensen v. NCH Corp., 956 P.2d 468, 474 (Alaska 1998) (citations omitted).

3. Jones v. Horace Mann Ins. Co., 937 P.2d 1360, 1361 (Alaska 1997) (citing Bishop v. Municipality of Anchorage, 899 P.2d 149, 153 (Alaska 1995)).

4. See Alaska Rent–A–Car, Inc. v. Ford Motor Co., 526 P.2d 1136, 1139 (Alaska 1974).

5. Shade v. Co & Anglo Alaska Serv. Corp., 901 P.2d 434, 437 (Alaska 1995) (citations omitted).

6. Id. (citing Alaska R. Civ. P. 56(c),(e)); Broderick v. King's Way Assembly of God Church, 808 P.2d 1211, 1215 (Alaska 1991).

7. Alaska Pacific Assurance Co. v. Collins, 794 P.2d 936, 942 (Alaska 1990) (quoting O'Neill Investigations, Inc. v. Illinois Employers Ins. of Wausau, 636 P.2d 1170, 1173 (Alaska 1981)).

8. Cox v. Progressive Cas. Ins. Co., 869 P.2d 467, 468 n. 1 (Alaska 1994) (citations omitted).

9. INA Life Ins. Co. v. Brundin, 533 P.2d 236, 241 (Alaska 1975) (citations omitted).

10. See id.

11. Sauer v. Home Indem. Co., 841 P.2d 176, 180 (Alaska 1992).

12. See Smith v. Great American Ins. Co., 629 P.2d 543, 545–46 (Alaska 1981) (citing Afcan v. Mutual Fire, Marine and Inland Ins. Co., 595 P.2d 638, 645 (Alaska 1979)).

13. See Afcan, 595 P.2d at 645.

14. CHI of Alaska, Inc. v. Employers Reins. Corp., 844 P.2d 1113, 1115–16, n. 5 (Alaska 1993) (citing Afcan, 595 P.2d at 645).

15. See id.; Continental Ins. Co. v. United States Fidelity & Guar. Co., 528 P.2d 430, 434–35 (Alaska 1974).

property damage that is "neither expected or intended from the standpoint of the insured." Finally, property damage entails physical injury to or destruction of tangible property and may include loss of use of tangible property which has not been physically injured or destroyed.

The trial court concluded that there was no occurrence. The court focused first on the complaint, finding that claims of fraud and misrepresentation "are not claims for property damage" and thus cannot fall within the meaning of the term "occurrence." The trial court also found that the judgment against Fejes for breach of warranty was not a claim for property damage. The court then focused on whether there were underlying facts within or potentially within policy coverage. It concluded there were not because there was not an accident:

> Plaintiff Fejes'[s] previous litigation did not involve an "occurrence" causing property damage as defined in the policy. "Occurrence" requires an "accident" that results in "property damage." There was no "occurrence" on the property purchased by Ms. Reeves. The curtain drain failed, causing the destruction of the septic system within one year after purchase. The septic system wasn't subject to an accident or repeated exposure to conditions other than the normal, expected, and intended use. The failure of the subcontractor . . . to properly install an on site septic system can hardly be called an occurrence or an accident.

Fejes takes issue with this rationale. Referring to the policy definition of "occurrence," he contends that the failure of the curtain drain, "allowing ground water to percolate through and destroy the septic system downslope, fits squarely within this policy definition," and that "[e]ven the flooding of the septic system was a continuous or repeated exposure to conditions that meets the definition." Fejes contends that the normal meaning of the term "accident" focuses not on the negligence of the actor but on the result. He argues:

In the trial court's view, it may be no "accident" that a mechanic fails to tighten the nuts on a wheel; but that cannot mean there is no "accident" for purposes of coverage when the wheel comes off on the highway. It may be no "accident" that a landlord fails to fix a broken step; but that cannot mean there is no "accident" for purposes of coverage when a tenant falls down the stairs. It may be no "accident" that [the subcontractor] failed to properly install the curtain drain; but that cannot mean that the drain's subsequent collapse and the destruction of the septic system did not constitute an "accident."

AIC responds that claims for misrepresentation or deceit do not arise out of "an accident."

 Fejes has the better of this argument. The mere fact that a complaint against a contractor is based on a theory of misrepresentation or deceit does not mean that the facts underlying the claim did not arise from an accident. We have defined the term "accident" as "anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected." [16] From Fejes's standpoint, the failure of the curtain drain was neither expected nor intended. And the fact that the drain failed by becoming infused with silt caused by "repeated and continuous exposure to conditions" does not take the failure out of the definition of "accident" under the policy.

 The trial court also concluded that Reeves's claims "are not claims for property damage." Fejes disagrees, noting that the trial court accepted that the failure of the curtain drain caused "the destruction of the septic system" and that the destruction of the septic system easily falls within one of the policy definitions of property damage, "destruction of tangible property."

AIC counters that Reeves's claims are for "loss-of-bargain damages" rather than for "destruction of tangible property." AIC also contends that the general coverage of comprehensive general liability policies is liability

**16.** *INA Life Ins. Co. v. Brundin,* 533 P.2d 236, 242 n. 23 (Alaska 1975) (quoting 10 *Couch on Insurance* § 41:6 (2d ed.1962)).

protection for damage to others, not for damage to the product or work of the insured. AIC argues that "[t]he coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."

On this point too we think Fejes is more persuasive. The flooding of the septic system fairly falls within the meaning of the term "destruction of tangible property." AIC's contention that Reeves's claims were for loss-of-bargain damages does not mean that those claims were not "because of" or resulting from property damage, which is what the policy requires. For reasons explained later in this opinion, the argument that comprehensive general liability policies do not cover damage to the work of the insured is not wholly accurate with respect to policies containing a broad form property damage liability coverage endorsement. In any case, such an argument could not overcome actual policy language.

We conclude therefore that the court erred in ruling that the facts underlying Reeves's complaint, construed favorably to Fejes, did not involve an occurrence within the meaning of the policy.

### D. *Is Coverage Excluded?*

The policy also contains numerous exclusions that remove from coverage liability resulting under specified circumstances. Viewing the facts in the light most favorable to Fejes, we conclude that none of the exclusions precludes coverage in the present case.

#### 1. *Exclusion (m)*

█ The trial court found that coverage was excluded under Exclusion (m). The court quoted this exclusion as eliminating from coverage "the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured."

We disagree. The full text of Exclusion (m) limits its applicability "to loss of use of tangible property which has not been physically injured or destroyed...." Since the septic system was physically injured or destroyed and Reeves's claims were not limited to loss of use, Exclusion (m) does not preclude AIC's duty to defend.

#### 2. *The broad form property damage liability exclusions*

█ Exclusion (o) excludes coverage for "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith." But AIC's policy also contains a broad form property damage liability coverage endorsement, which replaces Exclusion (o) with Exclusions (A)(1) through (A)(3). The endorsement expands the insured's liability coverage for property damage.

##### a. *Exclusion (A)(2)(d)(ii)-(iii)*

Exclusion (A)(2)(d)(ii)-(iii) eliminates coverage for "that particular part of any property, not on premises owned by or rented to the insured, ... (ii) out of which any property damage arises, or (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured."

Fejes argues that "that particular part of any property ... out of which property damage arises" refers to the curtain drain, since it was the failure of the curtain drain from which subsequent damage arose. Fejes claims that since Reeves did not seek compensation for damage to the curtain drain, nor was it restored, repaired or replaced, Exclusion (A)(2)(d)(ii)-(iii) does not apply. AIC counters that the holding tank system Reeves installed instead of restoring the septic system and curtain drain is effectively a repair of the defective system.

We reject AIC's argument as an overly broad interpretation of the exclusion. Fejes's interpretation is reasonable: the exclusion would exclude claims for the cost of repairing or replacing the curtain drain, but not the cost of alternative waste disposal systems made necessary by the failure of the curtain drain.

b. *Exclusion (A)(3)*

■ Exclusion (A)(3) excludes "with respect to the completed operations hazard ... [coverage for] property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith." Exclusion (A)(3) essentially parallels Exclusion (*o*), but with an important difference: it deletes (*o*)'s exclusion of work performed "on behalf of a named insured." The effect of this deletion is to provide coverage as to work performed for the named insured by subcontractors. We so concluded in *Alaska Pacific Assurance Co. v. Collins.*[17]

Exclusion (A)(3) removes coverage as to property damage or work performed by the named insured, but not by someone on behalf of the named insured. Since the property damage in this case arose from the subcontractor's work, the exclusion does not apply.

Insurance industry publications and case law support our conclusion. In *Fireguard Sprinkler Systems, Inc. v. Scottsdale Insurance Co.,*[18] the Ninth Circuit concluded that the broad form property damage endorsement, identical to that in the present case, is "intended to cover losses caused by the work of subcontractors."[19] The court supported its conclusion by quoting from insurance industry publications. It quoted a circular prepared by the Insurance Services Office which promulgated the form provisions at issue. The circular notes that the broad form exclusions are intended to "exclud[e] only damages caused by the named insured to his own work. Thus, ... [t]he insured would have coverage for damage to his work arising out of a subcontractor's work [and][t]he insured would have coverage for damage to a subcontractor's work arising out of the subcontractor's work."[20]

The Ninth Circuit also quoted a National Underwriters Association bulletin used by insurance agents and brokers to interpret standard insurance policy provisions. With respect to the broad form endorsement, the excerpt stated:

[T]he exclusion eliminates coverage for property damage to work performed by the named insured if the property damage arises out of the named insured's work or any portion of it.

Thus, an insured *has* coverage for his completed work when the damage arises out of work performed by someone other than the named insured, such as a subcontractor.... The usual Completed Operations coverage (no Broad Form Property Damage endorsement attached) flatly excludes property damage to work performed by *or on behalf* of the named insured arising out of the work. Under the usual coverage, then, the insured has no insurance whatsoever for damage to a subcontractor's work or for damage to his own work resulting from a subcontractor's work. Therein lie the advantages of Broad Form Property Damage coverage including Completed Operations. Consequently, if an insured does not anticipate using subcontractors, the value of purchasing Broad Form Property Damage coverage *with Completed Operations* is questionable, in view of the additional premium required for it.[21]

Other cases interpreting the broad form endorsement to provide coverage for losses caused by the contractor's subcontractors include *Maryland Casualty Co. v. Reeder;*[22] *McKellar Development of Nevada, Inc. v. Northern Insurance Co.;*[23] and *Prudential–LMI Commercial Insurance Co. v. Reliance Insurance Co.*[24]

17. 794 P.2d 936, 943 & n. 7 (Alaska 1990).

18. 864 F.2d 648 (9th Cir.1988).

19. *Id.* at 650.

20. *Id.* at 652.

21. *Id.* at 652.

22. 221 Cal.App.3d 961, 270 Cal.Rptr. 719 (1990).

23. 108 Nev. 729, 837 P.2d 858 (1992).

24. 22 Cal.App.4th 1508, 27 Cal.Rptr.2d 841 (1994). *But see Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.,* 396 N.W.2d 229, 234–38 (Minn.1986) (holding losses caused by subcontractor's faulty work not covered under broad form endorsement).

### 3. Exclusion (n)—Named Insured's Products

■ Exclusion (n) eliminates coverage for "property damage to the named insured's products arising out of such products." The "named insured's products" are "goods or products manufactured, sold, handled or distributed by the named insured." Fejes argues that a completed building is not a product, while AIC argues that it is. Other courts are divided on this issue.[25]

■ We are of the view that a "product" under the policy does not include a completed building. Interpreting the term to include a completed building would negate the intended coverage of the broad form endorsement, which is meant to provide protection to completed work when damage arises from the work of a subcontractor.

The National Underwriters Association bulletin mentioned above in *Fireguard Sprinkler Systems v. Scottsdale Insurance Co.* indicates that our reading of the product's exclusion is correct. As quoted in *Maryland Casualty Co. v. Reeder* the bulletin states:

> The editors have heard of instances in which insurers have denied coverage ... on the ground that the policy exclusion of injury to the named insured's products (which is not amended by the Broad Form endorsement) eliminates coverage for any damage to the completed building, the completed building being a "product" of the named insured. In the opinion of the editors, that reasoning ignores the distinc-

tion between the "completed operations hazard" and "named insured's products" in the policy definitions. Moreover, that reasoning precludes any possibility of recovery under the Completed Operations feature of the Broad Form Endorsement, a feature for which the insured has presumably paid an additional premium.[26]

### 4. Exclusion (l)—Alienated Premises

■ Exclusion (l), the "alienated premises" exclusion, removes from policy coverage liability for "property damage to premises alienated by the named insured arising out of such premises or any part thereof."

Fejes argues that the named insured, Becharof, never owned the premises and therefore never alienated them. He argues therefore that this exclusion does not apply. He also contends that the alienated premises exclusion is limited to cases where premises were first occupied, rented or held for rental by the insured and was not intended to apply to the completed operations of a contractor like Becharof.[27]

In response AIC contends that Fejes owned and sold the land on Becharof's behalf and thus, presumably, Becharof alienated the premises because Fejes did so on its behalf. AIC also argues that in contrast to the cases relied on by Fejes, a number of cases apply the alienated premises exclusion to situations where a contractor buys land and builds on it for purposes of sale without occupying the premises for its own purposes.[28]

**25.** Cases holding that a completed building is a builder's product include *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275, 1279–80 (Ind.1980); *Commerce Ins. Co. v. Betty Caplette Builders, Inc.*, 420 Mass. 87, 647 N.E.2d 1211, 1213 (1995) (citing cases); *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 236 (Minn.1986); *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 912–13 (1986); *Federated Serv. Ins. Co. v. R.E.W., Inc.*, 53 Wash.App. 730, 770 P.2d 654, 655, 657 (1989). Cases holding that a completed building is not a builder's product include *Reeder*, 270 Cal.Rptr. at 728; *Stratton & Co. v. Argonaut Ins. Co.*, 220 Ga.App. 654, 469 S.E.2d 545, 547–48 (1996); *Mid–United Contractors, Inc. v. Providence Lloyds Ins. Co.*, 754 S.W.2d 824, 826 (Tex.App.1988).

**26.** 270 Cal.Rptr. at 728 (emphasis removed).

**27.** Fejes relies on *Prudential–LMI Commercial Ins. Co. v. Reliance Ins. Co.*, 22 Cal.App.4th 1508, 27 Cal.Rptr.2d 841, 843 (1994), and *Maryland Cas. Co. v. Reeder*, 221 Cal.App.3d 961, 270 Cal. Rptr. 719 (1990).

**28.** AIC relies on *American States Ins. Co. v. Hanson Indus.*, 873 F.Supp. 17, 23–24 (S.D.Tex. 1995); *Reliance Ins. Co. v. Povia–Ballantine Corp.*, 738 F.Supp. 523, 525 (S.D.Ga.1990), aff'd, 927 F.2d 614 (11th Cir.1991); *Borden, Inc. v. Affiliated FM Ins. Co.*, 682 F.Supp. 927, 930–31 (S.D.Ohio 1987), aff'd, 865 F.2d 1267 (6th Cir. 1989); *Taylor–Morley–Simon, Inc. v. Michigan Mut. Ins. Co.*, 645 F.Supp. 596, 600 (E.D.Mo. 1986), aff'd, 822 F.2d 1093 (8th Cir.1987); *Rieder v. Cherokee Ins. Co.*, 635 F.Supp. 699, 702 (E.D.Pa.1986), aff'd, 813 F.2d 398 (3d Cir.1987); *Gary L. Shaw Builders, Inc. v. State Auto. Mut.*

We believe that the alienated premises exclusion should be narrowly construed. Otherwise, it would negate the coverage for completed work provided by the broad form endorsement. In this respect we agree with the position taken by the Supreme Court of Nevada in *McKellar Development v. Northern Insurance Co.*[29] Quoting an industry publication, the Nevada court stated:

> This exclusion could severely limit coverage granted under the [broad form] endorsement. Consider the contractor who constructs property such as office buildings, houses, etc., retains title, and later sells that property. This is often the case with real estate developers. Once the sale has taken place, the contractor or developer would have no property damage coverage for damage to the alienated premises even though he has purchased ... the proper [broad form] endorsement. *This interpretation is outside the scope of intent of the policy, but it has been taken on occasion by insurers.*[30]

California courts have made similar observations.[31] In *Prudential–LMI*, the court noted:

Although "it was never intended to apply to the completed operations of a contractor" where units were "construct[ed]" for the purpose of resale," "it has been used in conjunction with other 1973 CGL policy provisions to preclude coverage for construction-related property damage claims that probably should have fallen within the coverage intent of the policy." [32]

## V. CONCLUSION

We conclude that the superior court erred in holding that the facts underlying Reeves's claims were necessarily outside of policy coverage. The judgment is therefore REVERSED and this case is REMANDED for further proceedings.

CARPENETI, Justice, not participating.

Ins. Co., 182 Ga.App. 220, 355 S.E.2d 130, 135 (1987); *Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1284–85 (Ind.1991).

29. 108 Nev. 729, 837 P.2d 858, 860–61 (1992).

30. *McKellar*, 837 P.2d at 860–61 n. 4 (quoting J. Gibson, *Broad Form Property Damage Coverage: Analysis, Application and Alternatives* 12–15 (Intl. Risk Mgt. Inst., Inc.2d ed.1982)).

31. *Maryland Cas. Co. v. Reeder*, 270 Cal.Rptr. at 729–30; *Prudential–LMI Commercial Ins. Co. v. Reliance Ins. Co.*, 27 Cal.Rptr.2d at 844.

32. *Prudential–LMI*, 27 Cal.Rptr.2d at 844 (quoting Wielinski & Gibson, *Broad Form Property Damage Coverage* (3d ed.1992) at 99 (internal citations omitted)).