JENSEN, Justice (dissenting)
[¶26.] De Smet had a duty to defend Geidel because it was at least arguable that the Finks' negligence claims against Geidel alleged an "occurrence" under the policy. The policy defined an "occurrence" as, "an accident, including loss from continuous or repeated exposure to similar conditions, which results during the policy period, in bodily injury or property damage, neither expected nor intended from the standpoint of the insured." The definition of an "accident" included a "loss from continuous or repeated exposure to similar conditions," and not just a one-time, sudden event. Further, the question of whether the damage was expected or intended must be examined from Geidel's perspective.
[¶27.] The gravamen of the negligence claims against Geidel was that he chose a rural location for the confinement facility too close to the Finks' home, "had ample alternative locations ... which would have resulted in no harm to [the Finks]," and the facility was not being operated to minimize "the impact ... upon adjoining land owners." The complaint acknowledged the construction of the facility was approved by the county and there were no allegations the facility was constructed or operated in violation of any regulatory laws. Nonetheless, when the Finks commenced their suit and De Smet refused to defend Geidel, there was little information alleged regarding Geidel's knowledge about the size and operation of the facility when he sold the property to Cedar Creek. A negligence claim, by its very nature, involves only "an 'unreasonable risk of harm to another' "-a more modest showing of knowledge or culpability than the standard set by the policy's definition of an occurrence. See Fischer v. City of Sioux Falls , 2018 S.D. 71, ¶ 8, 919 N.W.2d 211, 215.
[¶28.] The conference opinion concludes this was not an occurrence because Geidel knew that the Finks "would see, hear, and smell the hog confinement facility" and knew of the Finks' objections to the construction of the facility before construction. While the Finks alleged they did see, hear, and smell the operation after it was constructed, the Finks' negligence claims did not allege that Geidel knew the Finks "would see, hear, and smell" the operation before he selected the site and sold the property.[1] In fact, the complaint alleges *485 nothing about what Geidel knew about the hog confinement facility or its operation before this time. Instead, the Finks alleged Geidel negligently selected the site for the facility when he sold the land and that he "knew, or had reason to know that the existence of such facility would be objectionable to [the Finks], due to the close proximity of the barn to [the Finks] residential properties." (Emphasis added.) The bare allegation that Geidel knew the facility was "objectionable" to the Finks is not the same as alleging that Geidel "expected or intended" that the facility and the activity associated with its operation would cause harm to the Finks. This is particularly true of the harm alleged in the form of a devaluation of fair market value of the Finks' home.
[¶29.] The Finks' objections to the facility's proximity to their home was a factor in considering the extent of Geidel's knowledge or understanding of the risk. However, it does not satisfy De Smet's burden to show Geidel "clearly " "expected or intended" to cause the Finks harm.[2] The Finks' subjective beliefs that the location of the proposed facility was "inappropriate" does not resolve the more fact-intensive question of whether Geidel expected or intended to cause the Finks harm when he selected a site to construct the facility.
[¶30.] Recently, in Owners Ins. Co. v. Tibke Constr., Inc., 2017 S.D. 51, 901 N.W.2d 80, this Court considered whether a homeowner's claim for damages against a building contractor was a covered "occurrence" under the contractor's liability policy. The homeowner claimed the contractor failed to conduct soil testing prior to construction, as required by the contract, causing the home to settle after it was completed. We recognized that faulty work by a contractor during construction resulting in subsequent damage to the homeowner may be an accident under the policy definition of "occurrence." Citing a Texas Supreme Court decision, we stated, "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." Id. (quoting Lamar Homes, Inc. v. Mid-Continent Cas. Co ., 242 S.W.3d 1, 8 (Tex. 2007).)
[¶31.] Here, the same analysis applies. The Finks alleged Geidel's act of selecting a site in close proximity to their rural home was negligent and caused them damage. The Finks alleged that Geidel could have selected a site on his property that would not have caused them harm. In other words, the complaint alleged it was not the facility itself that caused the Finks' damages, but Geidel's decision in selecting a site for the facility that caused their harm. De Smet simply did not have sufficient facts alleged in the complaint to reach a definitive conclusion that Geidel should have expected or intended his site selection decisions and other actions would cause harm to the Finks or diminish the value of their property. Without knowing any details about the operation of the facility, *486 or the extent of Geidel's personal knowledge of the operations at the time the site was selected and constructed, De Smet has not met its burden to show it was "clear" that Geidel expected or intended to cause the Finks harm. Coverage was at least arguable on the negligence claim and De Smet should have provided a defense to Geidel.
[¶32.] Because of its resolution of the "occurrence" issue, the majority opinion does not address the other two exclusions De Smet relied on to deny coverage and a defense to Geidel. I would conclude that the circuit court erred in determining that neither exclusion excused De Smet's duty to defend.
[¶33.] The first policy exclusion relied on by De Smet was the exclusion providing that "Personal Liability does not apply to ... bodily injury or property damage to or from premises you sell, give away or abandon, if the bodily injury or property damage arises out of such premises or a part of such premises." This Court has previously stated that "[w]hen an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co., 2012 S.D. 73, ¶ 9, 822 N.W.2d 724, 727. The circuit court concluded this exclusion was applicable because Geidel had conveyed all his interest in the property where the confinement facility was built and was no longer an owner at the time the Finks filed their lawsuit.
[¶34.] Although Geidel may have no longer owned the property, the court did not consider whether the Finks' alleged bodily injury or property damage arose from the premises that Geidel sold. The Finks did not allege their damages were the result of Geidel's property as it existed when it was sold. The Finks alleged that all of their damages occurred after the construction of the confinement facility on the premises. Since the confinement facility did not exist at the time Geidel sold the property, the damages alleged by Finks did not arise from the premises sold by Geidel.
[¶35.] This reading is consistent with a similar "premises alienated" exclusion examined in Prudential-LMI Commercial Ins. Co. v. Reliance Ins. Co ., 22 Cal.App.4th 1508, 27 Cal.Rptr.2d 841 (1994). There, the appeals court explained that the intent of such an exclusion is to "deny coverage to an insured who has failed to repair property prior to its sale or who has failed to disclose the existence of a defect in the premises at the time of sale." Id. at 844. This exclusion did not support De Smet's denial of coverage or denial of the duty to defend.
[¶36.] De Smet also erroneously relied on the pollution exclusion to liability coverage. The pollution exclusion afforded no coverage for damages arising from the "discharge, dispersal, release or escape of pollutants into or upon land, water, or air." The policy defines a "pollutant" as, "any solid, liquid, gaseous, thermal or radioactive irritant or contaminant, including ... waste." The policy's definition for "waste" includes "all material to be disposed of, recycled, reconditioned or reclaimed." The circuit court concluded the pollution exclusion was applicable because the odors from the hogs and the manure produced by the operation qualified as pollutants under the policy. Although this conclusion may be accurate, the court did not consider the Finks' claims that they suffered damages from the noise and visibility of the facility. Any damage to the Finks from noise and sight would fall outside the pollution exclusion. Since some of the claims are not *487 within the pollutant exclusion, De Smet was not completely relieved of its duty to defend Geidel.
[¶37.] I would reverse the circuit court's order granting summary judgment in favor of De Smet and denying summary judgment in favor of Geidel. I would remand for further proceedings consistent with this opinion.
[¶38.] SALTER, Justice, joins this dissent.

The Finks alleged an alternative count for punitive damages claiming that Geidel "knew, or should have known, that his actions would cause harm" to the Finks. The alternative trespass and punitive damages claims did not impact De Smet's duty to defend the negligence claim, as an insurer's duty to defend exists even if some of the claims in the policy are not covered. Lowery Constr. , 2017 S.D. 53, ¶ 8, 901 N.W.2d at 484.

In the context of reviewing a determination that a proposed 6000-hog confinement facility constituted a nuisance, this Court observed the fact-intensive nature of considering the full impact such a facility may have on surrounding neighbors:
It is not the feedlot itself that is the nuisance. It is the feedlot combined with other factors relied upon by the County Commission as a basis for its decision that makes this feedlot a nuisance in fact in this specific location. The circumstances and surroundings are the key to this facility being declared a nuisance. (Emphasis added.)
Coyote Flats, LLC. v. Sanborn Cty. Comm'n, 1999 S.D. 87, ¶ 35, 596 N.W.2d 347, 355.