**John S. KIM and T.O., as Mother and Next Friend of L.W., a minor, Appellants,**

v.

**NATIONAL INDEMNITY COMPANY, a Nebraska Corporation, Appellee.**

No. S–9207.

Supreme Court of Alaska.

Aug. 11, 2000.

---

John S. Hedland and Amy L. Vaudreuil, Hedland, Brennan, Heideman & Cooke, Anchorage, for Appellant T.O.

Laurence P. Keyes, Hughes Thorsness Powell Huddleston & Bauman, LLC, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

John Kim, a Bethel taxicab driver, sexually abused a minor who was a passenger in Kim's cab. When the minor's mother sued the cab driver, Kim looked to his automobile insurer for coverage. This appeal asks whether Kim's automobile insurance policy extends coverage under these circumstances. Because Kim's insuring agreement covers only accidental injury, and because it specifically bars coverage for injury arising from intentional acts and sexual molestation, we conclude that it does not provide coverage. Nor does the policy's uninsured motorist provision cover the minor's injury. We therefore affirm the superior court's decision to grant summary judgment in favor of the insurer.

## II. FACTS AND PROCEEDINGS

John Kim, a taxicab driver in Bethel, sexually abused L.W., a minor, in his taxicab. A jury convicted Kim of second- and third-degree sexual abuse of a minor. T.O., L.W.'s mother, subsequently filed a civil action against Kim, alleging that Kim engaged in sexual contact and sexual penetration with L.W.

At the time of the incident, Kim was insured under a commercial automobile insurance policy from National Indemnity Company. Kim had purchased this policy—a $300,000 single limit policy—to provide basic insurance for his taxi. The policy provides coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, *caused by an 'accident'* and resulting from the ownership, maintenance or use of a covered 'auto.' " (Emphasis added.) But the policy excludes coverage for " '[b]odily injury' or 'property damage' *expected or intended* from the standpoint of the 'insured.' " (Emphasis added.) It also excludes coverage for bodily injury or property damage arising out of the "abuse or molestation by anyone of any person while that person is in the care, custody or control of any insured."

National Indemnity reserved its right to contest coverage and agreed to defend Kim. Kim ultimately confessed judgment and assigned his rights against National Indemnity to T.O.

National Indemnity brought a declaratory judgment action and moved for summary judgment, asserting that the policy does not provide coverage for Kim's sexual abuse of L.W. T.O. opposed the motion and cross-moved for a ruling that the policy covers L.W.'s injuries. Superior Court Judge Charles R. Pengilly concluded that there was no coverage and granted summary judgment for National Indemnity, awarding fees and costs accordingly. T.O., on behalf of her son L.W., brings this appeal.

## III. STANDARD OF REVIEW

"We review a grant of summary judgment de novo, applying our independent judgment. We will uphold the summary judgment if no issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law." [1]

Moreover, we interpret insurance contracts de novo where there are no relevant unresolved or controversial facts.[2] In reviewing such contracts, we examine "the language of the disputed policy provisions, the language of other provisions in the policy, relevant extrinsic evidence, and case law in-

---

1. *Fejes v. Alaska Ins. Co., Inc.,* 984 P.2d 519, 522 (Alaska 1999) (internal citations and punctuation omitted).

2. *See id.*

terpreting similar provisions."[3] Also, because insurance policies are contracts of adhesion, we will construe them "so as to provide the coverage which a layman would reasonably have expected, given his lay interpretation of the policy language."[4]

## IV. DISCUSSION

### A. Coverage Does Not Extend to Kim's Sexual Abuse of L.W. Because the Abuse Was Not Accidental and Because Sexual Abuse Implies a Harmful Intent.

■ We construe an insurance contract "according to the entirety of its terms and conditions as set out in the policy and as amplified, extended, or modified" by other provisions that are part of the policy.[5] We ordinarily begin this process by looking to the insuring agreement and then examining any relevant exclusions.[6] Thus, we turn first to the insuring agreement itself and examine whether L.W.'s injury arose from an "accident."

■■ The insurance policy agrees to cover damages that are "caused by an 'accident.'" The policy defines "accident" as including "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" Because we find the policy's definition of "accident" to be unhelpful in the present context, we turn to our previous definition of that term: an "accident" is "anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected."[7] An accident ordinarily does not include injuries that are intentionally inflicted by the insured.[8] Indeed, Alaska recognizes "a general public policy against insuring a person against liability for his or her intentional acts."[9]

The superior court concluded that "L.W.'s damages were intentionally caused—they did not arise from an accident." T.O. does not specifically address this argument in her brief, but maintains that Kim did not intend to cause harm, thereby placing L.W.'s injuries within the policy's coverage. National Indemnity responds that Kim's sexual abuse of L.W. could not have been an accident.

Having been convicted of second- and third-degree sexual abuse of a minor, Kim was found to have knowingly engaged in sexual penetration and sexual contact with L.W.[10] Thus, Kim's sexual contact with L.W. was deliberate rather than accidental. Nor does T.O. cite any authority that Kim's abuse of L.W. was an accident. Because the insuring agreement only covers injuries "caused by an accident," we conclude that there is no coverage under this provision.

[8, 9] Moreover, Kim's insurance policy specifically excludes from coverage injuries that are "expected or intended from the standpoint of the 'insured.'" We agree with the majority rule that "in liability insurance cases involving sexual abuse of children, the intent to cause injury can be inferred as a matter of law."[11] The majority of courts

---

3. *Id.* (internal quotation and punctuation omitted).

4. *Id.* (quoting *INA Life Ins. Co. v. Brundin*, 533 P.2d 236, 241 (Alaska 1975)).

5. AS 21.42.230.

6. *See Fejes*, 984 P.2d at 522–24; *Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1362–66 (Alaska 1997); *Columbia Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 905 P.2d 474, 475–78 (Alaska 1995); *Whispering Creek Condominium Owner Ass'n v. Alaska Nat'l Ins. Co.*, 774 P.2d 176, 177–80 (Alaska 1989); *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 399–400 (Alaska 1988); *Hale v. Fireman's Fund Ins. Co.*, 731 P.2d 577, 579–80 (Alaska 1987).

7. *Fejes*, 984 P.2d at 523 (quoting *Brundin*, 533 P.2d at 242 n. 23).

8. *See* 6B John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 4312, at 316–17 (1979).

9. *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1423 (9th Cir.1995) (citing *Dairy Queen v. Travelers Indem. Co.*, 748 P.2d 1169, 1172 (Alaska 1988)).

10. *See* AS 11.41.436(a)(1); AS 11.41.438(a)(1).

11. *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 461 (3d Cir.1993) (citing cases at 461 n.5); *see M.C. v. Northern Ins. Co. of New York*, 1 P.3d 673, 676 n. 10 (Alaska 2000) ("It is immaterial that the offense of sexual abuse of a minor does not require the state to prove nonconsensual sexual contact.... Alaska law regards the victim's minority as precluding meaningful consent.").

agree with this rule [12] because "the harm to the victimized child is no less serious when the abusive adult's subjective intentions are purportedly 'benign.' " [13]

Because we infer an intent to injure as a matter of law from acts of child abuse and molestation, Kim's subjective intent is irrelevant.[14] Moreover, once the intent to injure is inferred, "it is unimportant that the scope of the injuries inflicted are greater than or different from the injuries which objectively might be expected." [15] Thus, in addition to not being an "accident," Kim's sexual abuse of L.W. was an intentional act for which the insurance policy specifically bars coverage.

### B. *The Abuse or Molestation Exclusion Does Not Grant Coverage to Kim's Abuse of L.W.*

T.O. argues that even if coverage does not exist under the insuring provisions, coverage may be implied through the abuse or molestation exclusion. That exclusion states that the policy does not apply to injury arising out of the "abuse or molestation by anyone of any person *while that person is in the care, custody or control of any insured.*" (Emphasis added.) T.O. argues that because this provision excludes from coverage injuries that result from the molestation of persons *within* the insured's "care, custody, or control," the policy must cover injuries that result from the molestation of persons *not within* the insured's care, custody, or control. National Indemnity responds that the "care, custody or control" language does not *create* coverage for sexual abuse injuries in any circumstances.

We agree with National Indemnity that the abuse and molestation exclusion does not imply that the policy would otherwise have covered acts of abuse and molestation by the insured. Indeed, as we have already determined, the policy excludes such acts by an insured because such acts are not "accidental" and are, in fact, "intentional." Thus, even if L.W. were not in Kim's care, custody, or control, the policy would not cov-

---

12. *See, e.g., Whitt v. DeLeu,* 707 F.Supp. 1011, 1014–15 (W.D.Wis.1989) (courts following the majority view "have found that the alleged sexual contact is so substantially certain to result in some injury, or so inherently injurious, that the act is considered a criminal offense for which public policy precludes a claim of unintended consequences, that is, a claim that no harm was intended to result from the act") (internal punctuation and citation omitted); *CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984) (sexual abuse of minor stepdaughter over 10-year period); *J.C. Penney Cas. Ins. Co. v. M.K.,* 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689, 695 (1991) ("the intent to molest [a child] is, by itself, the same as the intent to harm"); *McCullough v. Central Fl. YMCA,* 523 So.2d 1208 (Fla.Dist.App. 1988) (fondling genitals of three young boys); *Roe v. State Farm Fire & Cas. Co.,* 259 Ga. 42, 376 S.E.2d 876 (1989) (molestation of neighbor's minor daughter); *Altena v. United Fire & Cas. Co.,* 422 N.W.2d 485 (Iowa 1988) (extending inference as a matter of law to nonconsensual sexual acts with a 20–year–old adult); *Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400, 405 (1985) (intent to injure inferred sexual assault of a 14–year–old girl); *Horace Mann Ins. Co. v. Independent Sch. Dist. No. 656,* 355 N.W.2d 413, 416 (Minn.1984) (inferring intent to injure from unconsented sexual contact with minor); *(Allstate Ins. Co. v. Mugavero,* 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365, 369 (1992) (the majority rule "finds support in logic and in the generally accepted conception of harm as being inherent in the act of sexually abusing a child"); *Rodriguez v. Williams,* 107 Wash.2d 381, 729 P.2d 627, 630 (.1986) ("intent to injure ... should be inferred to the insured in sex abuse cases"); *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 376 S.E.2d 581, 584 n. 7, 585 (1988) (citing states following majority approach at n.7); 2 Eric Mills Holmes, *Holmes's Appleman on Insurance 2d* § 9.4, at 539 (1996) (For claims arising out of sexual molestation perpetrated by insureds, "[n]o coverage should be provided regardless of the insured's protestation that no injury was intended. An intent to injure should be presumed from the nature of the act."); 4 Holmes, *Holmes' Appleman on Insurance 2d* § 23.4, at 513 (1998) ("In certain situations, such as child sexual molestation, intent to harm may be inferred as a matter of law.").

13. *Wiley,* 995 F.2d at 464 (citing *Mugavero,* 581 N.Y.S.2d 142, 589 N.E.2d at 369). *See Yearty v. State,* 805 P.2d 987, 994 (Alaska App.1991) ("Virtually every case involving sexual abuse of a child is ... nonconsensual; because no case of a child sexual abuse involves conduct that is truly consensual, it is difficult to conceive of a situation in which an act of sexual abuse on a child would not also be an act of sexual assault.") (quoted in *M.C. v. Northern Ins. Co. of New York,* 1 P.3d 673, 676 n. 10 (Alaska 2000)).

14. *See Allstate Ins. Co. v. Roelfs,* 698 F.Supp. 815, 820 n. 6 (D.Alaska 1987).

15. *Rodriguez,* 729 P.2d at 630.

er L.W.'s injuries because Kim's acts of abuse were not accidental. The exclusion does not imply that coverage extends to intentional abuse by Kim under any circumstances. And it does not create coverage where coverage otherwise does not exist or where the policy specifically excludes it.[16] As the federal district court in Alaska observed in a case involving a homeowner's policy, "[t]he average person purchasing homeowner's insurance would cringe at the very suggestion that he was purchasing insurance to cover liability for sexual assault and molestation of a child."[17] We therefore conclude that the exclusion does not grant coverage to injuries resulting from the sexual abuse of a person who is *not* in the care, custody, or control of the insured.[18]

### C. The Uninsured/Underinsured Motorist (UM/UIM) Provision Does Not Extend Coverage to T.O.'s Claims.

■ Alternatively, T.O. argues that if there is no liability coverage under the policy, she is entitled to recover from the uninsured motorist provision under the same policy.[19]

T.O. argues that "if liability is denied based upon the molestation exclusion, there is no coverage that applies and the insurer has denied coverage." Thus, she argues, Kim's taxi would be uninsured from L.W.'s perspective and the uninsured coverage provision should therefore apply.[20] Even if this were true, however, the UM/UIM insuring agreement only covers *accidental* injuries that result from the use of the automobile. It states:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" or "property damage" caused by an "accident."

(Emphasis added.) Thus, the uninsured motorist provision does not cover L.W.'s injury for the same reasons that the general insuring agreement does not: L.W.'s injury did not result from an "accident."[21]

16. We observe that the abuse or molestation exclusion's probable purpose is to exclude coverage specifically in third-party assault situations for negligent failure to prevent abuse and molestation of a child who is under the insured's supervision. At most, the abuse or molestation exclusion implies that, without the exclusion, the insured might be held liable in such third-party assault cases. We encountered such a situation in *C.P. v. Allstate Ins. Co.*, 996 P.2d 1216 (Alaska 2000). That case did not involve an exclusion from coverage for intentional sexual abuse, and the insureds' liability was predicated on a third-party assault against a victim to whom the insureds owed a duty of care arising from a parental or custodial relationship. *See id.* at 1226–27. Here, by contrast, Kim perpetrated the very act of sexual abuse that we conclude bars coverage under the policy, and we need not reach whether coverage would extend to a claim that Kim negligently failed to prevent a third-party act of abuse or molestation in his taxicab.

17. *Roelfs*, 698 F.Supp. at 817 (internal punctuation omitted) (citing *Rodriguez v. Williams*, 42 Wash.App. 633, 713 P.2d 135, 137–38 (1986), *aff'd*, 107 Wash.2d 381, 729 P.2d 627 (1986)).

18. National Indemnity also asserts that the policy does not cover L.W.'s injury because the sexual molestation did not arise from the "use" of Kim's automobile. Under the insurance policy, coverage extends to injury resulting from "the ownership, maintenance or use of a covered 'auto.'" The superior court accepted National Indemnity's argument that because the taxicab was the "mere situs" of the molestation, the molestation did not arise from the "use" of Kim's taxicab, there was no coverage. Because we resolve T.O.'s appeal on other grounds, we need not address this argument here.

19. Although T.O. also purports to rely on the "underinsured motor vehicle" coverage, she does not advance any claim that Kim's automobile was underinsured. We therefore consider T.O. to have waived that argument. *See Adamson v. University of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991).

20. The policy defines "uninsured motor vehicle" as an automobile "[f]or which an insuring or bonding company denies coverage[.]"

21. T.O. also argues that the trial court's award of fees and costs should be reversed because it improperly granted summary judgment in favor of National Indemnity. The superior court granted National Indemnity $7,716.50 in attorney's fees and $1,162.44 in costs. Because we conclude that the superior court did not err in granting summary judgment, we affirm the award of attorney's fees and costs. *See* Alaska R. Civ. P. 82(a) ("the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule"); Alaska R. Civ. P. 79(a) ("the prevail-

## V. CONCLUSION

Kim's insurance policy only covers injuries that result from an "accident," and it specifically excludes coverage for injuries that are expected or intended or that result from acts of sexual abuse or molestation. Because we conclude that Kim's sexual abuse of L.W. was not an accident, and because we infer an intent to injure in sexual abuse cases, we agree with the superior court that coverage does not exist here. In addition, L.W. cannot recover under the policy's UM/UIM provision because that provision, too, requires "accidental" injury. We therefore AFFIRM the superior court's decision to grant summary judgment and AFFIRM its award of fees and costs.

ing party is entitled to recover costs ... that   were necessarily incurred in the action").