This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                        **NO. 30,634**

**DAVID ZAMORA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

Defendant David Zamora appeals the judgment and sentence filed after he entered a conditional guilty plea to aggravated driving while intoxicated. This Court issued a memorandum opinion affirming but withdrew the opinion after Defendant filed a motion for rehearing. Now, on rehearing, we again find no error in the district court's decision, and we affirm.

**The Tribal Officer's Authority Pursuant to NMSA 1978, Section 29-1-11 (2005)**

Defendant claims that Officer Kathleen Lucero lacked authority to enforce the New Mexico Traffic Code because she was not commissioned by the chief of the New Mexico State Police, as required by Section 29-1-11. The meaning and application of this statute are questions of law that we review de novo. *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868.

Section 29-1-11 describes the procedures by which the chief of the New Mexico State Police can issue a commission to a tribal officer, granting that officer authority as a New Mexico peace officer to enforce state law. The commissioning requirements include that the Indian tribe, nation, or pueblo of which the officer is a member have a written agreement with the chief of the state police, that it demonstrate that it has appropriate insurance to cover the officer, and that the officer complete a certain number of hours of training, among other things. *See* § 29-1-11(B), (C). However, nothing in the statute indicates that all tribal officers who are to be cross-

2

commissioned as New Mexico peace officers must be cross-commissioned pursuant to these procedures for commissioning by the chief of the state police. *See State v. Martinez*, 2005-NMCA-052, ¶¶ 10-11, 137 N.M. 432, 112 P.3d 293 (holding that Section 29-1-11's requirements for commissions issued by the state police do not apply to commissions issued by a county sheriff). In fact, the statute expressly provides that it is not intended to limit the authority of county sheriffs to appoint "duly commissioned state or federally certified officers who are employees of a police or sheriff's department of an Indian nation, tribe[,] or pueblo in New Mexico . . . to enforce New Mexico criminal and traffic law." Section 29-1-11(G). Accordingly, the plain language of the statute, which is generally the best indication of legislative intent, provides that county sheriffs are not bound by the requirements of Section 29-1-11 when issuing commissions to tribal officers. *See City of Albuquerque v. Montoya*, 2012-NMSC-007, ¶ 12, 274 P.3d 108 ("In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." (alteration, internal quotation marks, and citation omitted)).

Defendant argues that Section 29-1-11(G) cannot mean what it says because a better reading of the statute would be that every tribal officer must be cross-

commissioned pursuant to the requirements of Section 29-1-11. He asserts that such a reading is necessary to promote uniformity in the education, training, and procedures followed by tribal officers enforcing state law. Under Defendant's proposed interpretation, Section 29-1-11(G) does not mean that county sheriffs can cross-commission tribal officers without complying with the requirements set out for cross-commissions by the chief of the state police. Instead, it means exactly the opposite—that county sheriffs may appoint only those tribal officers whose tribe, pueblo, or nation has reached a formal agreement with the chief of the state police and who have met the requirements for cross-commissioning by the chief of the state police.

We find no support for Defendant's argument. Regardless of whether it would be wise as a policy matter to have all cross-commissioned tribal officers meet uniform requirements, Defendant's proposed reading directly contradicts Section 29-1-11(G). Pursuant to that section, county sheriffs are not to be limited in their authority to appoint tribal officers who are "employees of a police or sheriff's department of an Indian nation, tribe[,] or pueblo." *Id.* Defendant's reading would in fact limit their authority by permitting a county sheriff to appoint only tribal officers who have met all the requirements for appointment by the state chief of police and whose nation, tribe, or pueblo have entered into a formal agreement with the chief of the state police.

We decline to adopt a reading of the statute that is wholly contrary to the language of Section 29-1-11(G) itself. *See Montoya*, 2012-NMSC-007, ¶ 12 ("We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." (internal quotation marks and citation omitted)); *see also State v. Glen Slaughter & Assocs.*, 119 N.M. 219, 224-25, 889 P.2d 254, 259-60 (Ct. App. 1994) (stating that, where possible, this Court should avoid adopting a strained interpretation of statutory language). If the Legislature intended to permit county sheriffs to cross-commission only those tribal officers whose governments had agreements with the chief of the state police and who had met the requirements of Section 29-1-11, it could have said so directly.

**The Tribal Officer's Authority as a Special Deputy to Preserve the Peace**

Even if Officer Lucero could have been cross-commissioned without meeting all of the requirements of Section 29-1-11, Defendant argues that she was not authorized to conduct the stop in this case because she was a special deputy who was commissioned pursuant to NMSA 1978, Section 4-41-10 (2006). Section 4-41-10 provides that county sheriffs are authorized "to appoint respectable and orderly persons as special deputies to serve any particular order, writ or process or when in the opinion of any sheriff the appointment of special deputies is necessary and

5

required for the purpose of preserving the peace[.]" Defendant contends that pursuant to this statute, special deputies are only permitted to either serve documents or to engage in preserving the peace. Defendant's interpretation of the meaning of "preserving the peace" in the statute would limit the appointment of special deputies to circumstances where there is a "sudden and urgent need for extra manpower in a crisis."

New Mexico law does not support Defendant's narrow definition of preserving the peace. In New Mexico, a breach of peace is considered "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *State v. Florstedt*, 77 N.M. 47, 49, 419 P.2d 248, 249 (1966) (internal quotation marks and citation omitted). Our Supreme Court has held that "a person driving while intoxicated is committing a breach of the peace." *State v. Rue*, 72 N.M. 212, 216, 382 P.2d 697, 700 (1963). Accordingly, we conclude that Officer Lucero was preserving the peace when she stopped Defendant to investigate whether he was driving while intoxicated and that she was authorized to do so as a special deputy.

**The Challenge to the Warrantless Arrest**

Defendant contends that NMSA 1978, Section 66-8-125 (1978), precluded the tribal officer from conducting the warrantless arrest in this case. Section 66-8-125(A)

6

allows for warrantless arrests of people at the scene of a motor vehicle accident, people charged with theft of a motor vehicle, and people charged with a crime in another jurisdiction. As none of these circumstances were involved in this case, we cannot see how the statute would apply. More importantly, however, Defendant points to no place in the record where he preserved any argument about the propriety of the warrantless arrest. Instead, his arguments were solely about the officer's authority pursuant to Section 29-1-11 and Section 4-41-10. We therefore decline to reach this argument. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.").

**Reasonable Suspicion for the Stop**

Defendant appeals the denial of his motion to suppress based on his assertion that the officer did not have reasonable suspicion to stop him. "Appellate review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. The appellate court "[does] not sit as a trier of fact; the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses." *Id.* The appellate courts "view the facts in the manner most favorable to

the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *Id.*

Here, a motorist had made a call to the Isleta Police Department to report a "possible intoxicated driver." The vehicle was reported to be a small pickup truck that was "primer in color" or a "white primer" color. The caller reported that the caller was in a maroon Ford Expedition driving right behind the possibly intoxicated driver and that they were heading north on State Road 314, approaching the intersection with State Road 45. The officer, who had been approximately one minute away from the intersection at the time of the dispatch, went to the intersection of State Road 314 and State Road 45, where she saw a small pickup truck that matched the description and saw a maroon Ford Expedition driving approximately four car lengths behind the pickup truck. The pickup truck was driving at a high rate of speed but stopped and turned left into the parking lot of the Palace Wells Casino without using its turn signal. The officer followed and, based on the tip and the failure to use the turn signal, engaged Defendant in a traffic stop.

Defendant contends that the tip provided by the driver in the Ford Expedition was not sufficiently corroborated to support a reasonable suspicion for the stop. First, Defendant argues that his vehicle did not match the caller's description because his vehicle is white; the caller described the vehicle as "primer in color," and Defendant

believes that primer is commonly known to be grey. However, Defendant provides no evidence to support his contention that primer is known to be grey. *See State v. Gonzales*, 2011-NMCA-007, ¶ 30, 149 N.M. 226, 247 P.3d 1111 (explaining that we will not consider arguments based on factual allegations that are unsupported by citation to the record proper), *cert. denied*, 2010-NMCERT-012, 150 N.M. 492, 263 P.3d 269. Furthermore, the evidence of the caller's description was ambiguous in that at one point, the officer testified that the vehicle was described as "primer in color," and at another point, she testified that the vehicle matched the description because it was a "white primer" color. To the degree that there was any ambiguity about whether the caller actually described the truck as "primer in color" or a "white primer" color, the district court sitting as the factfinder was entitled to resolve this ambiguity to conclude that the color of Defendant's white pickup truck matched the description given by the caller. In addition, the color of the vehicle was not the only evidence on which the officer could have reasonably concluded that Defendant's truck was the vehicle described by the caller. There was also the fact that a vehicle matching the description of the caller's was driving four lengths behind Defendant's truck and that the truck was heading in the direction and was at the location where the caller said it would be. Together, this information was sufficient to identify Defendant's truck as the one described by the caller.

Defendant also asserts that the tip was not sufficiently corroborated because the officer did not observe the conduct reported in the tip: the truck's failure to maintain its lane. However, this Court has held that an officer may stop a vehicle to investigate a tip of possible drunk driving even when the officer herself does not observe any erratic driving. *See State v. Contreras*, 2003-NMCA-129, ¶ 21, 134 N.M. 503, 79 P.3d 1111. This is because the exigency created by a drunk driver is so great, and the intrusion of a brief traffic stop is relatively small, such that a brief stop to investigate a tip of possible drunk driving will generally be held to be reasonable. *Id.* Here, as in other cases upholding such stops, the facts of the case permitted the inference that the anonymous caller was a concerned motorist, the information was detailed enough to permit the officer to locate the vehicle in question and to confirm its description, and the caller was an apparent eyewitness to the erratic driving. *See id.* Accordingly, the tip alone was sufficient to justify the stop.

Even if the tip had not been sufficient to justify the stop, the officer's observation of Defendant's failure to use his turn signal provided a sufficient basis. NMSA 1978, § 66-7-325(A) (1978), requires the use of a turn signal before turning if "any other traffic may be affected by such movement." Here, the Ford Expedition was four car lengths behind Defendant, and the officer was also on the road. The fact that there were these two other vehicles on the road was sufficient to provide a

10

reasonable suspicion that other traffic could have been affected by Defendant's turn. *See State v. Hubble*, 2009-NMSC-014, ¶¶ 2, 11, 20, 34, 146 N.M. 70, 206 P.3d 579 (holding that even when the only other traffic in the area was the officer's vehicle, this evidence was sufficient, when viewed in the light most favorable to the state, to support a stop based on Section 66-7-325(A)); *cf. State v. Anaya*, 2008-NMCA-020, ¶ 19, 143 N.M. 431, 176 P.3d 1163 (holding that when the only other traffic in the area was the officer's vehicle, this evidence was insufficient, when viewed in the light most favorable to the defendant, to support a stop based on Section 66-7-325(A)).

Therefore, for the reasons stated in this Opinion, we affirm the district court.

**IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**TIMOTHY L. GARCIA, Judge**